Auto Reality Service, Inc., Appellant, *v.* Brown, Attorney General, et al., Appellees.

[Cite as Auto Reality Inc. v. Brown (1971), 27 Ohio App. 2d 77.]

(No. 10020—Decided May 4, 1971.)

*Mr. Paul A. McCrory, Jr.,* for appellant.

*Mr. William J. Brown,* Attorney General, and *Mr. F. Richard Heath,* for appellee Registrar of Motor Vehicles.

Holmes, J. This matter involves the appeal of a judgment of the Common Pleas Court of Franklin County denying an injunction to the plaintiff against the defendants and deciding the question of law as raised by the plaintiff in its complaint for declaratory judgment.

The facts and issues before us in this cause are unique, there being no case law in this state on the precise questions presented.

Briefly stated, the facts involve the plaintiff corporation, operating in Toledo, Ohio, which, through its officers,

conceived the idea of contacting individuals who wished to sell their automobiles and enter into a so-called listing agreement with the owner to advertise the automobile and to seek potential buyers therefor.

The owner would pay a fee to the plaintiff corporation at the time the automobile was listed and would further agree that a specific additional amount would be paid to the plaintiff for finding a buyer in the event a sale was made.

The plaintiff's procedure was to take a color photograph of the automobile, note the other pertinent data concerning the automobile, and then proceed to advertise it in the newspaper and on radio. Persons who were interested in the automobile would visit the office of plaintiff where the pictures of all of the listed automobiles could be examined and the other pertinent information could be obtained.

If interested in a given automobile, the potential buyer would be put in touch with the owner, and appropriate arrangements would be made for him to physically view the automobile.

If the owner and the prospective purchaser would arrive at an understanding, an agreement would be entered into between them and the title to the automobile would be transferred from the owner to the purchaser.

The plaintiff corporation would not take title to any of the automobiles that it listed or displayed for sale; maintain any inventory of automobiles; nor maintain a sales showroom or automobile sales lot for the purpose of displaying automobiles.

The plaintiff in its declaratory judgment complaint alleged that " * * * on or after July 31, 1970, the State of Ohio, acting by and through the defendant, Fred Rice, Registrar of the Bureau of Motor Vehicles of the State of Ohio, informed the plaintiff that it had no right to continue the operation of said business on the grounds that the same was and is in violation of the provisions of the Ohio Revised Code, Sections 4517.18, 4517.02, 4517.01(G), and 4505.18(B) (Motor Vehicle Dealers' Licensing Law) and

did thereby attempt to refuse this plaintiff the right to engage in and to pursue a lawful occupation and business venture as guaranteed by the Constitution of the State of Ohio and of the United States."

The plaintiff prayed for a declaratory judgment as to the validity of the foregoing sections of the Ohio Revised Code; as to the applicability of such sections to the plaintiff; that such sections, if applicable, be declared unconstitutional and invalid; or in the alternative, that they be declared not to apply to this plaintiff.

The trial court found that such sections and the rules and regulations of the Motor Vehicle Dealers' Licensing Board promulgated pursuant to R. C. chapter 4517 do apply to plaintiff; that said statutes and regulations are constitutional and valid; and that the said statutes and regulations are constitutional as applied to plaintiff. From such judgment, the plaintiff appeals to this court.

The pertinent portions of the statutes pertaining to the questions presented are as follows:

R. C. 4517.02:

"No person other than a salesman, dealer, or motor vehicle auction owner licensed according to sections 4517.-01 to 4517.18, inclusive, of the Revised Code, shall engage in the business of selling at retail or auctioning of motor vehicles within this state. No person shall engage in the business of displaying or selling at retail or auctioning motor vehicles in this state or assume to engage in such business without first having a license therefor * * * ."

R. C. 4517.01(G):

" 'Retail sale' or 'sale at retail' means the act or attempted act of selling, bartering, exchanging, or otherwise disposing of a motor vehicle to an ultimate purchaser for use as a consumer."

R. C. 4505.18:

"No person shall:
"* * *

"(B) Display or display for sale or sell as a dealer or acting on behalf of a dealer, a motor vehicle without having obtained a manufacturer's or importer's certificate or

a certificate of title therefor as provided in sections 4505.-01 to 4505.19, inclusive, of the Revised Code.''

The plaintiff's first assignment of error is that the trial court erred in finding that the statutes applied to the appellant's business.

The plaintiff's position, as it would relate to its business activities, is that such sections of Ohio law are not applicable to it in that the business purpose of the corporation as set forth in its articles of incorporation is to provide professional brokerage service to the owner of an automobile who desires to sell, by arranging advertising of the automobile for the purpose of obtaining a prospective purchaser.

The plaintiff argues that the corporation would never physically possess any automobile listed by it for sale and that said vehicle would be shown and demonstrated by the owner. And, further, the plaintiff argues that at no time did it own title or transfer title to the purchaser.

Further, the plaintiff urges upon this court the point that the aforementioned statutes, being regulatory in nature, should be strictly interpreted in plaintiff's favor and should not be broadly interpreted so as to include areas which were not specifically included within the original enactment.

We recognize that the plaintiff's business operation is not *malum in se,* and also recognize that such activities may in fact present a bona fide worthwhile service to automobile owners desiring to sell their vehicles.

However, we must also recognize that the legislature of the state of Ohio has the authority to enact licensing laws and provide for regulations that are reasonably necessary for the safety of the public. Further, we must recognize that the enactment of such legislation is within the discretion of the legislative body unless it be made clear that such legislation is unreasonable and arbitrary, or has no real or substantial relation to the public health, safety, morals or general welfare. Additionally, we recognize that any such regulatory legislation must not destroy lawful competition or create trade restraints tending to establish a

monopoly. *Ohio Motor Vehicle Dealers' & Salesmen's Licensing Board* v. *Memphis Auto Sales* (1957), 103 Ohio App. 347. The court held in the *Memphis* case that a "statutory regulation of the sale of motor vehicles, to be legal and constitutional, must be uniform in application and free from the vice of private selection discriminatory in character."

On such legal basis, the court held a regulation invalid which provided that only those individuals whom an automobile manufacturer chose could sell new cars. The court felt that such regulation was discriminatory and had no connection with the general welfare of the public.

It may be generally stated that the power to regulate is ordinarily confined to such reasonable restraints upon the business made the subject of the regulation as may be demanded by the public interest. In order to be free from the taint of unconstitutionality, laws or regulations which limit the exercise of an otherwise legitimate trade or business must be reasonable and they must bear a substantial relation to the problems sought to be eliminated.

The obvious purpose of the regulations covering automobile dealers is to eliminate fraud, or the opportunity for fraud, in the sale of motor vehicles to consumers. In this regard, it may be noted, as pointed out by the defendants, that the preamble to the original act providing for the licensing of automobile dealers reads as follows:

"An act to provide for the licensing of motor vehicle dealers and salesmen and the regulation of the sale of motor vehicles; to prohibit fraudulent and unfair practices in the business of selling motor vehicles and installment contracts arising out of such sales * * * ." 117 Ohio Laws 680.

In reviewing the regulatory statutes and regulations thereunder relating to the licensing of automobile dealers generally, it cannot be reasonably argued that such laws were enacted or rules promulgated without a substantial relation to the potential problems or evils sought to be eliminated.

There lies within the nature of the transaction of dealing in automobiles potential title problems, questions re-

lating to warranties of the automobiles' condition or performance, financing issues, and all phases of the contractual relationship between the parties.

The tremendous number of automobiles being bought and sold annually, and the great volume of money involved in the totality of these transactions, would leave no doubt as to the necessity of reasonable regulation of such business for the public good.

The plaintiff argues that he does not purport to be a dealer in automobiles, and that he is not selling automobiles as contemplated by the automobile dealers' licensing laws. Plaintiff contends that its type of business activities were not within the purview of the statutes in that it was acting in the capacity of a broker, providing listing service only, and neither owning, titling, nor selling any of the automobiles it listed.

It is true that the plaintiff has been conducting its business in an entirely different fashion than would a traditional licensed used car dealership. However, the fact remains that the commodity around which its operation revolves is automobiles, and the transactions involved are those of buying and selling such automobiles.

The clear intent of the legislature in enacting the automobile dealers' licensing laws was to prevent fraud upon the public in the sale of motor vehicles. The language as used is quite broad, and encompasses within it the regulation of all commercial dealings involving the selling of motor vehicles. We hold that such sections are broad enough in their scope to encompass the business operations of this plaintiff.

The plaintiff further presents the proposition that R. C. sections 4517 and 4505.18 are unconstitutional as applied to plaintiff's business in that the combined effect of such sections would make it impossible for it to operate in its present form of business even though a dealer's license were obtained.

We believe that this is a correct premise under the wording of the quoted sections of law. R. C. 4505.18 sets forth that:

"No person shall * * * (B) Display or display for sale or sell as a dealer or acting on behalf of a dealer, a motor vehicle without having obtained a manufacturer's or importer's certificate or a certificate of title therefor as provided in sections 4505.01 to 4505.19, inclusive, of the Revised Code * * * ."

Such section obviously contemplates that a dealer shall obtain title to the automobile prior to there being a sale of such automobile by the dealer. Conversely, plaintiff's form of operation contemplates or embodies neither of the elements of title and ownership of the automobile by the plaintiff, nor a sale thereof by it. The title and ownership remain in the private owner and the sale is made by the latter.

It is reasonably apparent that the legislature in enacting such sections of law did so with the intention that transactions involving the ultimate sale and the transferring of the evidence of ownership was fraught with a number of legitimate concerns.

The proper transferring of title from the seller to the buyer is the most important phase of the automobile sales transaction, and one that must be executed carefully and completely in order to vest the desired legal ownership in the buyer.

Further, in the process of the negotiations for sale it is possible that one in the plaintiff's position of showing an automobile for sale could make certain claims or representations about the automobiles that they have listed. If such representations were made, would prove to be false, and the automobile would later be found to be defective, to whom could the purchaser turn for reimbursement? To the agent, or to the prior owner?

With such thoughts in mind, we feel it to be in the public interest for the state to require that a commercial enterprise displaying or offering motor vehicles for sale to have title to said vehicles.

It seems to us to be in keeping with reasonably sound public policy to require such commercial enterprise to have title to automobiles with which they are dealing in a sales

capacity in order that such organizations may be required to stand behind any representations made by them during the course of the sales transaction.

If it should appear that the public desires such a commercial organization as contemplated by the plaintiff's operation, and parenthetically we state again that a valid service could well be rendered by such types of agencies, then it would become a legislative matter to provide for such agencies and transactions through the enactment of appropriate legislation.

We, therefore, hold that R. C. 4517 and R. C. 4505.18 have been designed and enacted for the purpose of avoiding or eliminating the opportunities for fraud in the merchandising of motor vehicles to the public. Further, we hold that such sections are reasonable and that the enactment of such sections was in the public interest and inures to the general welfare.

Concluding, then, we hold that R. C. 4517 and R. C. 4505.18 are constitutional as applied to the appellant's business.

The judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

REILLY, J., concurs.

WHITESIDE, J., dissenting. Finding myself unable to agree with the conclusions reached by the majority, I must dissent from this judgment.

Appellant is engaged in the business of a used motor vehicle broker. The basic question before the court is whether or not a person engaged in such a business is a "dealer" subject to being licensed pursuant to R. C. 4517. The judgment of the trial court and that of a majority herein concludes that a person engaged in such a business is a dealer within the meaning of the licensing statute, but further concludes, by implication from the statutes, that such a person may not obtain a license to engage in such a used motor vehicle broker business. He is then precluded by implication from engaging in such business at all.

There is no express statutory provision prohibiting a person from engaging in the business of used motor vehicle broker, but this prohibition is implied from the application of R. C. 4505.18, which prohibits a person from displaying or displaying for sale or selling a motor vehicle as a dealer without having obtained either a manufacturer's or importer's certificate, or a certificate of title for the vehicle involved.

If we were to apply the ordinary meaning of the words broker and dealer, it would be quite clear that a broker is not a dealer. Bouvier's Law Dictionary (8th ed. 3rd rev. 1914) defines brokers as follows:

"Those who are engaged for others in the negotiation of contracts relative to property, with the custody of which they have no concern. * * *

"One who negotiates a sale of another's property without having either actual or constructive possession of it is a broker as distinguished from a factor * * *."

In *French* v. *City of Toledo* (1909), 81 Ohio St. 160, we find the following definition of broker at page 167:

" 'A broker is an agent employed to effect bargains and contracts as a middleman between other persons for a compensation called brokerage. He takes no possession, as broker, of the subject-matter of the negotiations.' Webster's International Dictionary. 'Brokers are those who are engaged for others in the negotiations of contracts relating to property with the custody of which they have no concern.' * * * "

On the other hand, Bouvier's Law Dictionary defines dealer as follows:

"A dealer in the popular, and therefore in the statutory sense of the word, is not one who buys to keep, or makes to sell, but one who buys to sell again."

In *Gibson* v. *Bolner* (1956), 165 Ohio St. 357, the following definition of dealer is found at page 359:

"Bouvier's Law Dictionary (Baldwin's Century Edition), contains the following two definitions of 'dealer':

" 'A dealer in the popular, and therefore in the statutory sense of the word is not one who buys to keep, or makes to sell, but one who buys to sell again.

" 'He stands intermediately between the producer and the consumer, and depends for his profit, not upon labor he bestows upon his commodities, but upon the skill and foresight with which he watches the market.' "

Also to be distinguished are the terms commission merchant and factor. Bouvier's Law Dictionary, *supra,* defines commission merchant as follows:

"As this term is used, it is synonymous with the legal term 'factor,' and means one who receives goods, chattels, or merchandise, for sale, exchange, or other disposition, and who is to receive a compensation for his services, to be paid by the owner or derived from the sale of the goods."

The same dictionary defines factor as follows:

"An agent employed to sell goods or merchandise consigned or delivered to him, by or for his principal, for a compensation, commonly called factorage or commission. * * *

"An agent for the sale of goods in his possession or consigned to him. * * *

"A *factor* or *commission merchant* is one who has the actual or technical possession of goods or wares of another for sale. A merchandise broker is one who negotiates the sale of merchandise without having it in his possession or control. He is simply an agent with very limited powers * * * ."

As stated in the record, the business of plaintiff is that of a broker. It obtains listings from owners of motor vehicles they desire to sell. The owner grants it the exclusive right for a period of time to advertise the motor vehicle for sale to the general public at a stated price. If the motor vehicle is sold during the term of the exclusive agency, or within one month thereafter, to someone with whom the plaintiff has negotiated, the owner agrees to pay the plaintiff a commission of 7% of the selling price. As stated in its articles of incorporation, the purposes for which the plaintiff company was formed are:

"To advertise used automobiles for the purpose of bringing together prospective sellers and buyers. To pro-

vide a place where prospective purchasers of used automobiles can obtain information as to the make, model and year of used automobiles that are available for sale, as well as the price for which the automobiles can be purchased from individuals wishing to dispose of them by private sale. To act as agent for the sellers of used automobiles regarding advertising the automobiles to the public. To provide such other services as may be necessary from time to time to assist the private individual owning an automobile in finding a buyer for his automobile.''

It is quite clear that if the ordinary meaning of the word dealer is applicable, plaintiff is not a dealer. There is no indication that plaintiff buys any motor vehicles for resale, or sells any automobiles that it owns.

However, there are statutory definitions of the word dealer which must be considered. R. C. 4517.02 prohibits any person other than a salesman or dealer licensed pursuant to statute, from engaging in the business of selling motor vehicles at retail. R. C. 4517.18 prohibits any person from engaging in the business of selling, auctioning, displaying, offering for sale, or dealing in motor vehicles at retail without having a license therefor. R. C. 4517.01 (J) defines dealer as:

''All persons engaged in the business of selling, displaying, offering for sale, or dealing in motor vehicles at an established place of business which is used exclusively for the purpose of selling, displaying, offering for sale, or dealing in motor vehicles. * * *''

R. C. 4517.01(E) defines business as:

''Any activities engaged in by any person for the object of gain, benefit, or advantage either direct or indirect.''

R. C. 4517.01(F) defines engaging in business as:

''Commencing, conducting, or continuing in business, or liquidating a business when the liquidator thereof holds himself out to be conducting such business; making a casual sale is not engaging in business.''

R. C. 4517.01(G) defines retail sale or sale at retail (of an automobile) as:

"The act or attempted act of selling, bartering, exchanging, or otherwise disposing of a motor vehicle to an ultimate purchaser for use as a consumer."

Based upon what is before us, it must be concluded that plaintiff does not sell, display, or deal in motor vehicles. It merely advertises the motor vehicles and places the prospective purchaser in contact with the owner of the motor vehicle, who in turn sells it to the purchaser. While it is stated in plaintiff's brief that it shows colored pictures of motor vehicles advertised for sale, to prospective purchasers, there is no indication that there is any display of the motor vehicle itself by the plaintiff to any prospective purchaser. As noted above, with respect to the definition of the term dealer, dealing in motor vehicles must mean buying motor vehicles for the purpose of resale, and selling the motor vehicles so purchased. While, under a strict interpretation of the term "offering for sale," plaintiff does not engage in the business of offering motor vehicles for sale, if such words were given a quite broad interpretation, they might be construed as to include engaging in the business of used car broker.

While it may be quite desirable that a person engaging in the business of used car broker should be licensed, it is quite apparent from the statute that the General Assembly did not contemplate such a business by R. C. chapter 4517.

In addition to the prohibition of R. C. 4505.18, *supra,* R. C. 4517.06 provides, in part, that:

"No dealer licensed under sections 4517.01 to 4517.18, inclusive, of the Revised Code, shall directly or indirectly, solicit the sale of a motor vehicle through a pecuniarily interested person, nor shall such dealer pay any commission or compensation in any form to any person in connection with the sale of a motor vehicle, unless such person is licensed as a salesman in the employ of said dealer."

It would appear that sales solicited through the owner of the motor vehicle would be solicited through a pecuniarily interested person.

It would appear that by R. C. 4505.18 and 4517.06, a

licensed motor vehicle dealer is precluded from engaging in the business of used motor vehicle broker. Thus, as stated above, the majority, by finding plaintiff's business to be that of a dealer subject to licensing as a motor vehicle dealer, concludes that (1) plaintiff must obtain a license as a motor vehicle dealer in order to engage in the business of used motor vehicle broker and (2) if such license is obtained, by virtue of being so licensed as a motor vehicle dealer, it is precluded from engaging in the business of a used motor vehicle broker.

There can be no doubt that the business of used motor vehicle broker is a lawful business unless made unlawful by a valid statute. In the absence of an express statutory prohibition against engaging in an otherwise lawful business, courts should refrain from declaring unlawful an otherwise lawful business. If the business of used motor vehicle broker should be regulated or prohibited, this is a matter that should be accomplished by legislative action rather than judicial decision.

The right to engage in any business not a nuisance per se is guaranteed by Sections 1 and 16 of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution, except to the extent that such business is regulated, or prohibited by reasonable legislative acts bearing a reasonable relation to the public health, safety, morals or general welfare. *Frecker* v. *City of Dayton* (1950), 153 Ohio St. 14; *Benjamin* v. *City of Columbus* (1957), 167 Ohio St. 103. It is only in unusual circumstances that an otherwise lawful business may be prohibited rather than merely regulated.

It is my view that R. C. 4505.18, 4517.01, 4517.02, 4517.-06 and 4517.18 should be read in *pari materia*. When so read, it is apparent that a person engaging in the business of used automobile broker is not a motor vehicle dealer subject to licensing pursuant to R. C. chapter 4517. While these sections do justify the conclusion that a motor vehicle dealer is precluded from also engaging in the business of used motor vehicle broker in connection with his business as a dealer, they equally compel the conclusion

that the business of a used motor vehicle broker is not a type of business for which a motor vehicle dealer license must be obtained. The statutes regulate the dealer but do not prohibit a person from engaging in the business of broker. The activities of such a broker are more akin to those of a salesman as defined in R. C. 4517.01(K) than those of a dealer, except that the broker's activities are not on behalf of a dealer but on behalf of a private owner making a casual sale.

Such casual sales are excepted from the definition of "engaging in business" by R. C. 4517.01(F). The business of the broker is merely that of aiding private persons in making casual sales of motor vehicles they own.

Of course, although from what is before us, plaintiff's business is strictly that of a used motor vehicle broker, it is always possible that the future conduct of the business may be otherwise. However, that potentiality must await its occurrence.

The business of broker is similar to that of an operator of a motor vehicle auction which was only recently regulated by R. C. chapter 4517. However, I have found no authority, prior to the adoption of such regulatory provisions, holding such an auction business to be, or not to be subject to licensing pursuant to R. C. chapter 4517 or prohibited thereby.

Accordingly, I would reverse the judgment of the Court of Common Pleas and render judgment finding and declaring that plaintiff is not required to obtain a dealer license pursuant to R. C. chapter 4517 in order to engage in the business of used motor vehicle broker consisting of obtaining listings from private owners, other than dealers, of used motor vehicles they desire to sell, advertising such motor vehicles as being for sale through such private owner, placing prospective purchasers in contact with the private owner, and collecting a commission in the event the motor vehicle is sold.