In re CHARLIE BISANG CHRYSLER–
PLYMOUTH, INC., Bankrupt.

James A. HARRIS, Trustee,
Plaintiff-Appellant,

v.

CHRYSLER MOTORS CORPORATION,
et al., Defendants-Appellees.

No. C 82–948.

United States District Court,
N.D. Ohio, W.D.

Sept. 30, 1983.

George Ferstle, Toledo, Ohio, for plaintiff-appellant.

Ellis Robinson, Toledo, Ohio, for defendants-appellees.

## OPINION AND ORDER [1]

POTTER, District Judge:

This cause came to be heard on appellant's brief and assignment of error in his appeal from a memorandum and order of the United States Bankruptcy Court, 24 B.R. 350, Northern District of Ohio, West-

ern Division, and appellees' response thereto.

The appellant in this action, James A. Harris, Trustee of the Estate of Charlie Bisang Chrysler-Plymouth, Inc., filed a complaint against appellees Chrysler Motors Corporation (Motors) and Chrysler Credit Corporation (Credit), asserting that the Estate was entitled to $34,200.24. This amount represented the proceeds of sale of 7 new motor vehicles.[2]

The bankrupt was a factory dealer for Motors in Marion, Ohio. From about February 28, 1973, it had an agreement with Credit under which Credit financed the bankrupt's purchase of new cars from Motors. Under the agreement, as the manufacture and assembly of cars designated for sale to the bankrupt were completed, Motors would, by a computerized process, issue a Manufacturer's Statement of Origin (M.S.O.) in the name of the bankrupt and an invoice for each car and would notify Credit. Credit would thereupon make payment to Motors, and Motors would arrange for the shipment of the vehicle to the bankrupt and would deliver the invoice and the M.S.O. for each car to the bankrupt by mail. The bankrupt received the invoices and the M.S.O.'s sometimes before, sometimes with, and sometimes after the delivery of the vehicles involved. During 1974 and 1975, except for a brief period when Credit took possession of them, the M.S.O.'s were in possession of the bankrupt. Under the arrangement, when the bankrupt sold a car, it was to remit from the proceeds of the sale the invoice amount of that car to Credit.

During 1975, the bankrupt experienced financial difficulties which culminated in the filing of a voluntary petition in bank-

1. Notwithstanding the repeal of the Bankruptcy Act under Section 401(a) of Title IV of Pub.L. No. 95–598, this case, as all cases commended under the Bankruptcy Act, continues to be governed by its provisions pursuant to Section 403(a) of Title IV of Pub.L. 95–598.

2. The Bankruptcy Court's memorandum and order included rulings on three separate groups of motor vehicles or their proceeds which appellant claimed as part of the bankruptcy estate. The Court's disposition of the proceeds of

55 new and used motor vehicles is the subject of a separate appeal (See 37 B.R. 599). The trustee concedes the correctness of the Bankruptcy Court's memorandum and order concerning the disposition of a certified check which was the proceeds from the sale of a motor vehicle. The appellant also concedes the correctness of the Bankruptcy Court's award to Motors of $601.00 incidental damages incurred in the transportation of vehicles which the bankrupt refused to accept.

ruptcy on December 16, 1975. The appellant was appointed first as receiver and later as trustee of the bankrupt estate by order of the Bankruptcy Court.

At the time of the filing of the bankruptcy petition, the bankrupt had in its possession M.S.O.'s issued by Motors on various dates from November 21, 1975 through December 5, 1975, in the name of the bankrupt for 7 motor vehicles. It did not have physical possession of these 7 vehicles. They were in the possession or under the control of Motors. Credit had paid Motors the full purchase price ($34,200.24) for the 7 vehicles pursuant to the financing arrangement described above with the expectation that the vehicles would be transferred to and accepted by the bankrupt.

Subsequent to the filing of the bankruptcy petition, Motors sold these 7 motor vehicles for the sum of $34,200.24 of which it remitted to Credit the sum of $6,433.88, proceeds of the sale of one of the cars, holding the balance of $27,776.36 for disposition in accordance with the order of the Bankruptcy Court. The appellant claimed ownership of the vehicles and entitlement to their proceeds. Credit asserted its interests in the 7 vehicles, having made payment for them to Motors.

The Bankruptcy Court dismissed the appellant's complaint for turnover of the 7 vehicles as against Credit for lack of jurisdiction over Credit. It also ordered dismissal of the appellant's claim against Motors for the proceeds of the 7 vehicles, holding that the appellant had no right, title or interest in the vehicles.

The appellant has raised two issues on appeal. The first issue is whether the Bankruptcy Court committed reversible error in its dismissal as to Credit for lack of jurisdiction of the appellant's complaint for turnover of the 7 vehicles sold by Motors for the sum of $34,200.24 and for failing to find that Credit had no right, title or interest therein.

■ The Court agrees with the Bankruptcy Court that it had no jurisdiction over

Credit. See *Cuvrell v. Mazur (In re F & T Contractors, Inc.)*, 649 F.2d 1229, 1233 (6th Cir.1981), in which the Sixth Circuit stated the general rules related to the Bankruptcy Court's jurisdiction under the Bankruptcy Act of 1898.[3]

The second issue is whether the Bankruptcy Court committed reversible error in its dismissal of the appellant's complaint against Motors for the sum of $34,200.24, the proceeds of the sale of the 7 motor vehicles.

Section 70 of the Bankruptcy Act of 1898 (11 U.S.C. § 110) provides in pertinent part:

> Title to Property. a. The trustee of the estate of a bankrupt ..., upon his ... appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this Act...

The Bankruptcy Court discussed in detail the location of "title" to the 7 vehicles shortly before and on the day of the filing of the bankruptcy petition, doing a meticulous analysis of the applicable provisions of Article 2 of the Uniform Commercial Code (U.C.C.). The Bankruptcy Court found that title to the 7 vehicles vested in the bankrupt when Motors delivered them at the factory to the carrier for shipment to the bankrupt. The appellant does not dispute this finding. On or about December 4, 1975, the bankrupt ceased doing business. On December 5, 1975, the bankrupt declined to accept delivery of 3 of the 7 vehicles from the long distance carrier. On the same date, the bankrupt also arranged with representatives of Motors and Credit to divert or stop further shipments of vehicles in transit or on order from Motors. This included the four other vehicles for which the bankrupt held M.S.O.'s.

The Bankruptcy Court found that on December 5, 1975, when the bankrupt refused to accept delivery, title to the 7 vehicles revested by operation of law in Motors un-

---

**3.** The Bankruptcy Court's holding that Motors     had consented to jurisdiction was not appealed.

der the terms of U.C.C. § 2–401(4).[4] Title[5] to the 7 cars was thus not held by the bankrupt on December 16, 1975, the date of the filing of the petition.

The appellant asserts that Motors was unjustly enriched by the Bankruptcy Court's finding that Motors held title to the cars on the date of bankruptcy and that "ownership" should not be the only test of entitlement to the vehicles' proceeds. This Court finds no merit in that argument. Under the agreement with Credit, Motors' standard procedure when financed vehicles were diverted was to refund previously paid monies to the original financial institution. Pursuant to this agreement, Motors had remitted to Credit the sum of $6,433.88, proceeds of the sale of one of the cars, before the bankruptcy petition was filed and the refund of the remaining $27,776.36 was halted pending determination by the Bankruptcy Court of who was entitled to the proceeds.

Motors was thus not in the position of a seller who reclaimed goods and also retained the price that the buyer had paid for them. Motors' position has been that it held the vehicles as Credit's agent, not, as appellant suggests, that it could distribute the proceeds to whomever it wished.

The appellant's position as a hypothetical lien creditor under § 70(c)(3) of the Bankruptcy Act (11 U.S.C. § 110(c)) does not give him superior rights to the proceeds of the 7 vehicles to those of Credit. His rights and powers as a lien creditor extend to

all property ... upon which a creditor of the bankrupt upon a simple contract could have obtained such a lien, whether

or not such a creditor exists. If a transfer is valid in part against creditors whose rights and powers are conferred upon the trustee under this subdivision, it shall be valid to like extent against the trustee.

Since the bankrupt did not hold title to the 7 vehicles on the date of the filing of the petition, no creditor of the bankrupt could have obtained a lien on them.

This Court finds unpersuasive the appellant's argument that Motors' remedies are limited to the various U.C.C. sellers' remedies enumerated in Part 7 of Article 2. Appellant cites no authority supporting his narrow interpretation of sellers' remedies. On the contrary, U.C.C. § 1–102(1) provides in part that:

[t]his Act shall be liberally construed and applied to promote its underlying purposes and policies.

The Official Comment to § 1–102 states that:

[t]his Act is drawn to provide flexibility so that ... it will provide its own machinery for expansion of commercial practices. It is intended to make it possible for the law embodied in this Act to be developed by the courts in the light of unforeseen and new circumstances and practices.

It is clear that the Code drafters did not have in mind, when enumerating the various remedies available to aggrieved sellers, financing arrangements of the specific type that the bankrupt, Motors and Credit were parties to. Motors' standard procedure when financed vehicles were diverted from their buyer was to refund previously paid monies to the original financing institution.

---

4. U.C.C. § 2–401(4) provides:
   A rejection or other refusal by the buyer to receive or retain the goods, whether or not justified, or a justified revocation of acceptance revests title to the goods in the seller. Such revesting occurs by operation of law and is not a "sale".

5. Although the concept of "title" is deemphasized in Article 2 of the Uniform Commercial Code, where the question of who holds title to goods is material, the provisions of U.C.C. § 2–401 apply. This Court follows the Bank-

ruptcy Court in referring to the applicable sections of the Uniform Commercial Code in terms of the general provisions of Article 2. The Bankruptcy Court found that, pursuant to the Direct Dealer Agreement between the bankrupt and Motors, the Michigan version of the U.C.C. was controlling. It also found that Michigan and Ohio had enacted virtually identical versions of Article 2 and that there were no differences in construction of the pertinent provisions in the two jurisdictions.

608

Thus, in the ordinary course of the parties' dealings, the bankrupt would have no claim for a "refund" of the payment price of a vehicle which it had ordered from Motors and financed through Credit. Motors returned to Credit $6,433.88, representing the price of one of the 7 vehicles. The filing of the bankruptcy petition halted the transfer of the remaining proceeds of the sale of these vehicles, $27,776.36. Since the bankrupt would have had no claim to these proceeds under the financing arrangement, the appellant, bankrupt's representative, has no claim to them.

The appellant does not dispute the Bankruptcy Court's finding that he does not have title to the 7 vehicles by virtue of his possession of M.S.O.'s for these vehicles. This Court agrees with the Bankruptcy Court that title to the vehicles passed to the bankrupt pursuant to the terms of the U.C.C. Article 2 and to Direct Dealer Agreements between the bankrupt and Motors, rather than on the "transfer" date printed on the vehicles' U.S.O.'s.

■ This Court also agrees with the Bankruptcy Court's holding that the provisions of Article 2 of the U.C.C. rather than those of Ohio Revised Code § 4505.04 (Ohio's Certificate of Motor Vehicle Title Act) govern the issue of title to the 7 vehicles.

THEREFORE, for the above stated reasons, good cause appearing, it is

ORDERED that the order of the Bankruptcy Court dismissing appellant's complaint against Credit for lack of jurisdiction be, and it hereby is, AFFIRMED; and it is

FURTHER ORDERED that the order of the Bankruptcy Court dismissing appellant's complaint against Motors for the sum of $34,200.24 be, and it hereby is, AFFIRMED.