In re CHARLIE BISANG CHRYSLER–
PLYMOUTH, INC., Bankrupt.

James A. HARRIS, Trustee,
Plaintiff-Appellee,

v.

CHRYSLER CREDIT CORPORATION,
et al., Defendants-Appellants.

No. C 82–855.

United States District Court,
N.D. Ohio, W.D.

Sept. 30, 1983.

George Ferstle, Toledo, Ohio, for plaintiff-appellee.

Ray Farris, Toledo, Ohio, for defendants-appellants.

OPINION AND ORDER[1]

POTTER, District Judge:

This cause came to be heard on appellant Chrysler Credit Corporation's brief and assignment of error in their appeal from a memorandum and order of the United States Bankruptcy Court, 24 B.R. 350, Northern District of Ohio, Western Division, and appellee's response thereto.

The appellee in this action, James A. Harris, Trustee of the Estate of Charlie Bisang Chrysler-Plymouth, Inc., Bankrupt, filed a complaint against the appellants, among others, asserting that the Estate was entitled to the proceeds of the sale of 55 motor vehicles—sold by Trustee for the sum of $168,089.89—which the bankrupt had in his possession on the date of bankruptcy.

Although three complaints were filed by the Trustee in the proceedings below and the Bankruptcy Court addressed each in its memorandum and order, each complaint relates to one of three distinct groups of vehicles. The present appeal is only concerned with the proceedings and order relating to the 55 motor vehicles which were in the bankrupt's physical possession at the time it filed its bankruptcy petition.[2]

The bankrupt was a factory dealer for Chrysler Motors Corporation (Motors), selling its Chrysler and Plymouth lines of cars from at least February 28, 1973. From about the same date, by agreement with Motors and Chrysler Credit Corporation

---

1. Notwithstanding the repeal of the Bankruptcy Act under Section 401(a) of Title IV of Pub.L. No. 95–598, this case as all cases commenced under the Bankruptcy Act, continues to be governed by its provisions pursuant to Section 403(a) of Title IV of Pub.L. 95–598.

2. The proceedings and order relating to the two other groups of motor vehicles are the subject of a separate appeal filed by the Trustee and pending before this court in 37 B.R. 604.

(Credit), it had an arrangement under which Credit financed its purchase of new motor vehicles from Motors. As part of the procedure for financing, the bankrupt gave to Credit a security interest in each vehicle, evidenced by a standard trust receipt and a wholesale promissory note. To perfect the security interest, Credit followed the procedures enumerated in Ohio's version of the Uniform Commercial Code (U.C.C.), Article 9 (Ohio Revised Code Chapter 1309). That is, it filed financing statements with the Secretary of State of Ohio and with the appropriate county recorder's office. If any type of inventory collateral but motor vehicles had been involved, this public recording of Credit's security interests would have perfected them so as to give Credit priority against all third party claims, including those of the Trustee.

Under the arrangement among the bankrupt, Credit and Motors, as the manufacture and assembly of cars ordered or otherwise designated for sale to the bankrupt were completed, Motors would, by a computerized process, issue a Manufacturer's Statement of Origin (M.S.O.) in the name of the bankrupt and an invoice for each car, and would notify Credit. Credit would thereupon make payment of the invoice amount to Motors, and Motors would arrange for the shipment of the vehicle to the bankrupt by common carrier and would deliver the invoice and the M.S.O. for each car to the bankrupt by mail. The invoices and the M.S.O.'s would be received by the bankrupt sometimes before, sometimes with and sometimes after delivery of the vehicle involved. During 1974 and 1975, except for a short period of time when Credit took possession of them, the M.S.O.'s remained in the possession of the bankrupt. Under the arrangement, when the bankrupt sold a car, it was to remit the invoice amount to Credit from the proceeds of the sale of that car.

During 1975, the bankrupt experienced financial difficulties which culminated in the filing of a voluntary petition in bankruptcy on December 16, 1975. The appellee was appointed first as Receiver and later as Trustee in Bankruptcy of the bankrupt estate by order of the Bankruptcy Court.

At the time of the filing of the bankruptcy petition, the bankrupt had in its possession 55 new and used vehicles for which it also had in its possession either an M.S.O. issued by Motors for new cars or an Ohio certificate of title issued in its name for used cars.

By mutual agreement of the parties, the Bankruptcy Court issued an order authorizing and directing the sale of the 55 vehicles, free and clear of liens, with the proviso that all liens were to attach to the proceeds of the sale. The proceeds amount to $168,089.98.

The Trustee claimed the entire proceeds on behalf of the creditors of the estate, free of any claims of Credit or other defendants named in the complaint. He contended that Credit failed to perfect its security interest in the 55 vehicles because it did not comply with the Ohio Certificate of Motor Vehicle Title Law provision relating to the recordation of security interests (Ohio Revised Code § 4505.13). Credit claimed the entire proceeds as a creditor with a security interest therein perfected as against the Trustee and other creditors which entitled it to a priority over the Trustee and other creditors.

The Bankruptcy Court held that the Ohio Certificate of Motor Vehicle Title Act (Title Act) prescribes the exclusive method for perfecting a security interest in the inventory of new and used motor vehicles held for sale by a dealer, notwithstanding the provision of Ohio's version of the U.C.C.

The appellant's sole issue on appeal is whether the Bankruptcy Court committed reversible error in disregarding the appellant's allegedly perfected security interest in the 55 motor vehicles and their proceeds by its decision granting the appellant a prior lien under § 70(c) of the Bankruptcy Act [11 U.S.C. § 110 repealed].

The Court agrees with the Bankruptcy Court that the Title Act prescribes the exclusive method of perfecting a security interest in motor vehicles held as inventory.

The Bankruptcy Court, stating that the case was one of first impression, discussed in some detail the legislative history of the Title Act, Ohio Revised Code, Chapter 4505 (first enacted in 1938) and the Ohio version of Article 9 of the Uniform Commercial Code, Ohio Revised Code Chapter 1309. The Bankruptcy Court noted that the Ohio Legislature amended the Title Act at the time it adopted the Uniform Commercial Code, both effective July 1, 1962.

Section 4505.13, Ohio Revised Code, prescribes the method for perfecting a security interest in motor vehicles. As amended effective July 1, 1962, it reads in relevant part as follows:

Sections 1309.01 to 1309.50, inclusive . . . of the Revised Code, do not permit or require the deposit, filing, or other record of a security interest covering a motor vehicle. Any security agreement covering a security interest in a motor vehicle, if such instrument is accompanied by delivery of a manufacturer's or importer's certificate and followed by actual and continued possession of such certificate by the holder of said instrument, or, in the case of a certificate of title, if a notation of such instrument has been made by the clerk of the Court of Common Pleas on the face of such certificate, shall be valid as against the creditors of the debtor, whether armed with process or not, and against subsequent purchasers, secured parties, and other lienholders or claimants. All liens, mortgages and encumbrances noted upon a certificate of title shall take priority according to the order of time in which the same are noted thereon by the clerk.

On July 1, 1962, Ohio also adopted the Uniform Commercial Code, Ohio Revised Code, Title 13. Section 1309.21, as revised effective June 27, 1963, Ohio Revised Code, (U.C.C. 9–302) in pertinent part provides as follows:

(C) The filing provisions of section[s] 1309.01 to 1309.50, inclusive, of the Revised Code, do not apply to a security interest in property subject to a statute:

\* \* \* \* \* \*

(2) of this state [including section 4505.13 of the Ohio Revised Code] which provides for central filing of, or which requires indication on a certificate of title of such security interests in such property or which requires possession of a manufacturer's or importer's certificate.

(D) A security interest in property covered by division (C) of this section can be perfected only by a registration or filing under that statute or by indication of the security interest on a certificate of title or a duplicate thereof by a public official or by otherwise complying with the procedure set forth in such statute.

The Bankruptcy Court stated that both of the above quoted sections of the Ohio Revised Code expressly exempt holders of security interests in motor vehicles from the filing provisions of the U.C.C. The drafters of the Model Code provided state legislatures with the opportunity to distinguish motor vehicles held as inventory from other motor vehicles. They offered two different methods for incorporating the state title acts into Article 9. As the Bankruptcy Court noted, the Ohio legislature rejected the form of U.C.C. § 9–302 which would have subjected motor vehicles held as inventory to Article 9 filing.

The Bankruptcy Court viewed this as a manifestation of the legislature's clear intent not to alter Ohio's prior law governing the perfection of liens on motor vehicles. The Bankruptcy Court found that the appellant's attempt to perfect its security interest in the 55 vehicles by filing was ineffective, the appellant thus holding an unperfected security interest. Under § 70(c) of the Bankruptcy Act [¶ 11 U.S.C. § 110 repealed], the Trustee has the status of a hypothetical judgment lien creditor; his claim to the proceeds would thus take priority over that of appellant.

This Court agrees with the Bankruptcy Court that these Ohio statutes make clear the Ohio legislature's intent that security interests in motor vehicles be perfected exclusively through compliance with the Title Act. Ohio appears to be one of very few states which require perfection of security

interests in motor vehicles by either of two methods:

1. Notation of lien on the certificate of title; or

2. Actual and continued possession of a manufacturer's or importer's certificate (M.S.O.).

For an inventory financer of new motor vehicles, such as the appellant, the Ohio procedure can be cumbersome as well as unusual. *See,* Welsh, *Security Interests in Motor Vehicles Under Section 9–302 of the Uniform Commercial Code,* 37 U.Cinn.L. Rev. 265, 301–03. O.R.C. Sections 4505.05 and 4505.18 prohibit dealers from purchasing or displaying for sale new vehicles "without having obtained" the M.S.O.'s. These statutes, which are designed to prevent fraudulent dealer practices, do not, as the appellant asserts, require that the dealer retain actual continuous possession of the M.S.O.'s. However, compliance with these statutes requires that dealers obtain at least temporary possession, while O.R.C. § 4505.13 requires that the secured party have "actual and continuous" possession of the M.S.O. in order to have a perfected security interest in new cars as inventory. To perfect a security interest in used vehicles, for which a certificate of title has been issued, the secured party must have his lien noted upon each certificate of title by the clerk of Common Pleas Court.

Although O.R.C. Sections 4505.05 and 4505.18 do not, as the appellant argues, conflict with the provisions of O.R.C. § 4505.13, these three sections do prescribe what appears to this Court to be, under some circumstances, an unnecessarily awkward and complicated mechanism. Testimony at trial suggests that the degree of inconvenience caused by the current system of motor vehicle inventory lien perfection depends upon the physical distance separating the dealer and his inventory financer. If the financer is a local bank, the bank's retention of M.S.O.'s causes the dealer little difficulty, expense or inconvenience. The situation is different, however, when the dealer and his inventory financer are located a significant distance apart, as were the

bankrupt and the appellant. Then the system is cumbersome and expensive. It can cause cash flow problems for dealers and delays in the turning over of vehicles to buyers. The parties stipulated that it is the custom of most Ohio retail dealerships whose inventory is subject to financing arrangements to keep possession of the M.S. O.'s.

The drafters of the 1972 Amendments to Article 9 of the Uniform Commercial Code stated their hope that "certificate of title laws will be amended or construed so that the Code filing system for inventory will be exclusive and will not be duplicated by the certificate of title system." 1972 Official Test Showing Changes Made in Former Test of Article 9 at G–7.

Accordingly, the model statute 9–302 was revised to read:

(3) The filing of a financing statement otherwise required by this Article is not necessary or effective to perfect a security interest in property subject to

\*  \*  \*  \*  \*  \*

(b) the following statutes of this state; [list any certificate of title statute covering automobiles, trailers, mobile homes, boats, farm tractors, or the like, and any central filing statute]; *but during any period in which collateral is inventory* held for sale by a person who is in the business of selling goods of that kind, *the filing provisions of this Article* (Part 4) *apply to a security interest in that collateral* created by him as debtor (emphasis added).

In its subsequent revision of the Ohio version of § 9–302 (O.R.C. § 1309.21(C)(2), effective 1/1/79), the Ohio Legislature did not include the clause from the Model Act which provides that inventory collateral is subject to the perfection provisions of the U.C.C. The Title Act thus continues to provide the sole, albeit sometimes inconvenient, method under which a creditor can perfect a security interest in motor vehicles held in inventory.

Since the legislature has so recently expressed its intent not to follow the proce-

dure recommended by the Model Code drafters and adopted by many states, this Court must affirm the decision of the Bankruptcy Court that the appellant's attempt to perfect its security interest in the 55 cars in question under the Ohio U.C.C. provisions was ineffective. The function of this Court is to follow the law, not to improvise upon it. The Model Code's recommended method of perfecting security interests in automobiles held as inventory seems to this Court preferable to that adopted by the Ohio legislature. But this is a decision to be made by the legislature, not by the courts.

The appellant has cited several cases which it argues support the conclusion that the Ohio version of Article 9 of the U.C.C. rather than the provisions of O.R.C. § 4505.13 should govern perfection of security interests in motor vehicle inventory. This Court does not find these cases persuasive.

*Auto Reality Service v. Brown,* 27 Ohio App.2d 77, 272 N.E.2d 642 (Franklin County, 1971) does not stand for the proposition that a party displaying or offering vehicles for sale must have actual possession of a certificate of title or M.S.O. *Brown* involved the legality of an informal used car brokerage business under which the plaintiff served as a middleman between potential buyers and sellers of automobiles. It did not take title to any of the automobiles which it listed for sale. The Court held that O.R.C. § 4505.18 clearly requires dealers to hold title to automobiles which they display for sale. The Court did not discuss the question of whether the dealer must have in his possession, as evidence of title, a M.S.O. or certificate of title. The case provides no support for the appellant's argument that O.R.C. § 4505.18(B) requires dealers to have continuous possession of M.S.O.'s.

The appellant asserts that *Hughes v. Al Green, Inc.,* 65 Ohio St.2d 110, 418 N.E.2d 1355 (1981) stands for the proposition that U.C.C. provisions should apply where the provisions of the Motor Vehicle Title Act are "inefficient, inappropriate and in conflict." In *Hughes* the buyer of a motor vehicle asserted that an automobile dealer had breached his sales contract because, before a certificate of title was issued in her name, she had damaged the car in a collision. Under O.R.C. § 4505.04 a buyer does not have title to a motor vehicle until the dealer issues him a certificate of title.

The Ohio Supreme Court held that the dealer was not in breach of contract. It found that under O.R.C. § 1302.53(C) (U.C.C. § 2–509), the risk of loss had passed to the buyer upon her receipt of the goods. The court found that the question of who bears the risk of loss is not covered by O.R.C. § 4505.04. Article 2 of the U.C.C. changed the common law rule that title to contract goods determined the risk of loss. The court saw no conflict or inconsistency between the provisions of the U.C.C. and those of the Title Act. Rather, the conflict was between the former common law rule and the § 1309.21 statutory rule on risk of loss. This case does not support the appellant's position that the provisions of the U.C.C. should take precedence over those of the Title Act.

The appellant also cites *Fuqua Homes, Inc. v. Evanston Building & Loan Co.,* 52 Ohio App.2d 399, 370 N.E.2d 780 (Hamilton County, 1977) as an Ohio precedent in which the court applied the U.C.C. rather than the Title Act. That case involved the ownership of a mobile home which had been attached to real property. The buyer paid the middleman-dealer who then disappeared without paying the manufacturer. Although the mobile home had been affixed to the buyer's real estate, the manufacturer retained the manufacturer's certificate of title. The court faced the question of which of two innocent parties would bear the loss that resulted from the dealer's fraud. It held that the trial court had not erred in applying the U.C.C. to the facts of the case. The court noted that O.R.C. Chapter 4505 does not exclusively govern the location of title. It found the acquisition of ownership of a house trailer to be governed by Article 2 of the U.C.C. It also found the provisions of O.R.C. § 4505.13 to be irrelevant because the manufacturer as-

serted ownership of the mobile home, not a security interest in it. Since the parties in *Fuqua* both asserted ownership of the vehicle in question and since there is no question of fraud related to the 55 motor vehicles, this case does not support the appellant's position. The court also stated that the Title Act did not define the rights of the parties because the mobile home, having been converted into real estate, was no longer a motor vehicle.

This Court finds no merit in the appellant's arguments based on equitable principles.

THEREFORE, for the above stated reasons, good cause appearing, it is

ORDERED that the order of the Bankruptcy Court granting the appellee the proceeds of the sale of 55 motor vehicles sold by him for the sum of $168,089.98 free and clear of any claimed security interest of Chrysler Credit Corporation be, and it hereby is, AFFIRMED.