Ohio Public Interest Action Group, Inc., Appellant, *v.*
Public Utilities Commission of Ohio et al., Appellees.

176

(No. 74-1032—Decided July 16, 1975.)

178

*Messrs. Zellmer & Gruber, Mr. James J. Schiller, Mr. Sheldon R. Jaffery* and *Mr. Charles B. Zellmer*, for appellant.

*Mr. William J. Brown*, attorney general, *Mr. Charles S. Rawlings* and *Mr. Thomas J. Conaty*, for appellee Public Utilities Commission.

*Messrs. Dargusch & Day* and *Mr. Ted B. Clevenger*, for appellee Ohio Association of Broadcasters.

*Mr. Edwin N. Hopping, Mr. Alan D. Wright, Messrs. Squire, Sanders & Dempsey, Mr. Alan P. Buchmann, Mr. James H. Woodring, Messrs. Porter, Stanley, Platt & Arthur, Mr. Michael P. Graney, Mr. Curtis A. Loveland, Mr. William E. Herron, Mr. Stephen F. Koziar, Jr., Mr. Richard S. Weygandt, Mr. Russell J. Spetrino, Messrs. Day, Ketterer, Raley, Wright & Rybolt, Mr. Robert M. Rybolt, Messrs. Fuller, Henry, Hodge & Snyder, Mr. Paul M. Smart* and *Mr. Reginald S. Jackson*, for appellees The Cincinnati Gas & Electric Company and others.

CORRIGAN, J. The first three of appellant's propositions of law are directed to the applicability of Section 9 of Amended Substitute House Bill 206 to the proceedings being conducted by the Public Utilities Commission, pursuant to appellant's complaint.

*I.*

Appellant's initial contention is that Section 9 cannot affect the proceedings or the commission's investigation because Section 9 "contains a savings clause which saves and makes the law under which these cases have been initiated still applicable." The "savings clause" referred to by appellant is the language of the statute which excepts from its terms restrictions on advertising which were "* * * otherwise expressly provided by law or by rules properly adopted in accordance with law and in effect on March 1, 1974."

It is appellant's position that R. C. 4905.26, under which the present proceedings were being conducted at the time of the enactment of Amended Substitute House Bill 206, is a "law" which was "in effect on March 1, 1974" and that R. C. 4905.26 vests the commission with authority "to regulate advertising or promotional activity of any sort by public utilities."

R. C. 4905.26 provides, in pertinent part:

"Upon complaint in writing against any public utility by any person, firm, or corporation, or upon the initiative or complaint of the Public Utilities Commission, that any rate, fare, charge, toll, rental, schedule, classification, or service, or any joint rate, fare, charge, toll, rental, schedule, classification, or service rendered, charged, demanded, exacted, or proposed to be rendered, charged, demanded, or exacted, is in any respect unjust, unreasonable, unjustly discriminatory, unjustly preferential, or in violation of law, or that any regulation, measurement, or practice affecting or relating to any service furnished by said public utility, or in connection with such service, is, or will be, in any respect unreasonable, unjust, insufficient, unjustly discriminatory, or unjustly preferential, or that any service is, or will be, inadequate or cannot be obtained, and, upon complaint of a public utility as to any matter affecting its own product or service, if it appears that reasonable grounds for complaint are stated, the commission shall fix a time for hearing and shall notify complainants and the public utility thereof, and shall publish notice thereof in a newspaper of general circulation in each county in which complaint has arisen. * * *"

Appellant argues that R. C. 4905.26 gives the commission "power to regulate the promotion of area development and advertising" and that the "savings clause" of Section 9 expresses a legislative intention that Section 9 "would not affect any proceedings pending under any law which had prior to March 1, 1974 already given a 'state agency, board, or commission' such power."

R. C. 4905.26 sets out a procedure for the commission to investigate the matters therein enumerated. Assuming that R. C. 4905.26 empowers the commission to investigate the matters raised in appellant's complaint, that investigative authority itself does not constitute a "law" or a "rule" restricting advertising by utilities which was in effect on March 1, 1974. The pendency of proceedings, pursuant to R. C. 4905.26, which could have resulted in an order by the commission regulating advertising by utili-

ties, did not therefore constitute a "law" or "rules properly adopted in accordance with law" so as to bring the proceedings within the exceptions enumerated in Section 9.

*II.*

Appellant's second contention regarding the applicability of Section 9 is that "* * * [R. C.] 1.58, the general savings clause, applies and saves the laws under which the * * * proceeding and commission investigation were being prosecuted * * *."

R. C. 1.58 provides, in part:

"(A) The reenactment, amendment, or repeal of a statute does not * * * :

"(1) Affect the prior operation of the statute or any prior action taken thereunder;

"(2) Affect any validation, cure, right, privilege, obligation, or liability previously acquired, accrued, accorded, or incurred thereunder;

"* * *

"(4) Affect any investigation, proceeding, or remedy in respect of any such privilege, obligation, liability, penalty, forfeiture, or punishment; and the investigation, proceeding, or remedy may be instituted, continued, or enforced, and the penalty, forfeiture, or punishment imposed, as if the statute had not been repealed or amended."

R. C. 1.58 is concerned with the effect which reenactment, amendment or repeal has upon statutes. For its provisions to apply here it would be necessary to first conclude that R. C. 4905.26 has been repealed by Section 9. Appellant argues that the effect of Section 9 diminished the broad general powers of the commission "* * * to the extent that they no longer include the power to regulate promotional activities or advertising" and that this amounts to a *pro-tanto* implied repeal of R. C. 4905.26.

Section 9, of course, does not expressly repeal R. C. 4905.26. It prospectively prohibits any action on the part of a state agency, board or commission which would limit or restrict the right of any public utility to engage in and promote area development or to advertise. When Section

9 became effective, the proceedings instituted by appellant, under R. C. 4905.26, were not concluded and no final order affecting substantive rights had been entered. The General Assembly, by enacting Section 9, prospectively prohibited the commission from making an order such as that sought by appellant which could have resulted in limiting or restricting the right of a public utility to engage in and promote area development or to advertise. The General Assembly did not thereby affect the *procedure* established by R. C. 4905.26 for investigation of matters therein enumerated and therefore did not repeal R. C. 4905.26 by implication. Since R. C. 4905.26 was not repealed by Section 9, R. C. 1.58 is not applicable.

### III.

Appellant's third contention in respect to the application of Section 9 is that its application violates constitutional provisions prohibiting retroactive legislation. As observed above, Section 9 prospectively prohibited the order sought by appellant prior to the conclusion of the commission proceedings. Inasmuch as the commission dismissed the proceedings and no final order on the merits was entered prior to the effective date of Section 9, no vested substantive rights of appellant were affected by the dismissal of the complaint. The operation of Section 9 was therefore not retroactive.

### IV.

In its fourth proposition of law, appellant asserts that commercial advertising does not constitute "speech" within the meaning of the First Amendment to the United States Constitution and may be regulated by the commission. If Section 9 is valid, it is not necessary to here consider the question whether the commission may regulate advertising without violating constitutional principles of free speech, as Section 9 effectively prohibits any such regulation by the commission in the instant proceedings.

### V(A).

Appellant's propositions of law five and six question generally the validity of Section 9. Appellant urges that

Section 9 is antithetical to the "common welfare clauses of both the United States and Ohio Constitutions"; and that it violates the doctrine of separation of powers.

In support of its contention that Section 9 is antithetical to the "common welfare," appellant cites cases from other states, where utility commissions have "criticized the advertising and promotional practices of electrical utilities within their jurisdiction." Although appellant states in its brief that it does "not question the wisdom of the General Assembly in passing Section 9 of Am. Sub. H. B. 206," it is apparent that the arguments advanced to support its contention that Section 9 violates "common welfare" generally criticize the Act, particularly the provisions of Section 9 prohibiting the regulation of advertising by the commission.

Concerning the wisdom of legislative enactments, it was said in *State Board of Health* v. *Greenville* (1912), 86 Ohio St. 1, 20:

"* * * The question of the constitutionality of every law being first determined by the Legislature, every presumption is in favor of its constitutionality. It must, therefore, clearly appear that the law is in direct conflict with inhibitions of the constitution before a court will declare it unconstitutional. Nor has the question of the wisdom of the legislation anything to do with determining its constitutionality. That question is for the Legislature, and whether the court agrees with it in that particular or not is of no consequence. It is solely a question of power. If the Legislature has the constitutional power to enact a law, no matter whether the law be wise or otherwise it is no concern of the court. * * *"

*V(B).*

Appellant's separation of powers argument that the "* * * effect of Section 9 * * * as applied to these proceedings was to usurp the quasi-judicial functions of PUCO by deciding a pending case" is not well taken. Although the commission does exercise quasi-judicial powers, it is not a court. In fact, as stated in paragraph one of the sylla-

bus in *Penn Central Transportation Co.* v. *Pub. Util. Comm.* (1973), 35 Ohio St. 2d 97:

"The Public Utilities Commission of Ohio is a creature of the General Assembly and may exercise no jurisdiction beyond that conferred by statute. * * *"

We are of the opinion that in questioning the validity of Section 9 appellant has failed to show any "direct conflict with inhibitions of the Constitution."

## VI.

The final issue presented by appellant concerns the allowance of attorney fees. Appellant contends that the commission "* * * is authorized under existing law, in its discretion, to allow attorney's fees, expenses, and costs of, or in connection with, any hearing or investigation against any party to the record or may divide such fees, expenses and costs among any parties to the record in such proportion as it may determine."

Appellant relies upon R. C. 4903.24 and 4905.61. R. C. 4903.24 reads:

"If the Public Utilities Commission finds after investigating that any rate, joint rate, fare, charge, toll, rental, schedule, or classification of service is unjust, unreasonable, insufficient, unjustly discriminatory, unjustly preferential, or in violation of law, or that any service is inadequate or cannot be obtained, the public utility found to be at fault shall pay the expenses incurred by the commission upon such investigation.

"All fees, expenses, and costs of, or in connection with, any hearing or investigation may be imposed by the commission upon any party to the record or may be divided among any parties to the record in such proportion as the commission determines."

The foregoing section relates to "expenses incurred by the commission" and the fees, expenses, and costs mentioned in the statute which may be imposed by the commission are only those which the commission itself incurs in the course of an investigation.

R. C. 4905.61 provides:

"If any public utility or railroad does, or causes to be done, any act or thing prohibited by Chapters 4901, 4903, 4905, 4907, 4909, 4921, 4923, and 4925 of the Revised Code, or declared to be unlawful, or omits to do any act or thing required by such chapters, or by order of the Public Utilities Commission, such public utility or railroad is liable to the person, firm, or corporation injured thereby in treble the amount of damages sustained in consequence of such violation, failure, or omission. * * *''

The evident purpose of this section is to provide damages to parties injured by the acts of utilities and not to pay attorney fees.

Thus, the commission did not err in failing to consider appellant's request for attorney fees.

The order of the commission dismissing the proceedings, being neither unreasonable nor unlawful, is affirmed.

*Order affirmed.*

O'NEILL, C. J., HERBERT, STERN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.