THE CITY OF CINCINNATI, APPELLEE, *v.* SHANNON, APPELLANT.

(No. C-780360—Decided March 21, 1979.)

*Mr. Thomas A. Leubbers, Mr. Paul J. Gorman* and *Mr. Dennis S. Helmick,* for appellee.

*Mr. Joseph C. Merling* and *Mr. Richard C. Gasen,* for appellant.

BLACK, J. The error asserted in appellant's single assignment of error is that the trial court unconstitutionally imposed a sentence of thirty days incarceration on him for a violation of the Cincinnati ordinance against reckless driving. Appellant (the defendant in the trial court) pleaded no contest to the charge of violating Cincinnati Municipal Code Section 506-6, and the penalties imposed were thirty days of confinement in the Community Correctional Institution, a fine of $250 and costs. This was the maximum punishment under C.M.C. 506-6 and 512-6.[1] Under the state statute against reckless driving,[2] the punishment could not have exceeded a fine of $100.

Appellant asserts three constitutional errors. The first two involve Section 26, Article II, of the Ohio Constitution, which requires that all laws of a general nature shall have a uniform

---

[1] C.M.C. 506-6 reads in full as follows:

"No person shall operate a vehicle on any street or highway without due regard for the safety of persons or property."

The punishment for a violation of this section, as set forth in C.M.C. 512-6, is not more than $250 and not more than 30 days in jail.

[2] R. C. 4511.20 reads in full as follows:

"No person shall operate a vehicle, trackless trolley, or streetcar on any street or highway without due regard for the safety of persons or property."

Under R. C. 4511.99(D), a first offense is a minor misdemeanor, which under R. C. 2929.21(D) involves a maximum fine of $100 and no incarceration.

statewide operation, and Section 3, Article XVIII, which prohibits municipalities from enforcing regulations that conflict with the general laws of the state. The third constitutional ground advanced by appellant is that his rights to equal protection were violated.

The city replies initially that appellant waived any error in sentencing because he did not raise the constitutional question until after the court declared his punishment. We find no merit in this position for two reasons. First, appellant could not know before that moment whether his punishment would exceed the $100 fine allowed under the statute. Second, the constitutional question was raised orally in the trial court before an entry was journalized, and thus the trial court had ample opportunity to correct its error, if any.

The first two questions have been decided contrary to appellant's claim by *Columbus* v. *Molt* (1973), 36 Ohio St. 2d 94, in which it was held that R. C. 4511.06, requiring uniform traffic laws, and R. C. 4511.99(F), prescribing certain penalties are not "general laws," under Section 3, Article XVIII, of the Constitution. It would seem to follow that traffic laws are not "general laws" under Section 26, Article II, of the Constitution. The rationale is that no conflict exists merely because different penalties are provided for the same acts even though greater penalties are imposed by the municipal ordinance (*Toledo* v. *Best* [1961], 172 Ohio St. 371; *Village of Struthers* v. *Sokol* [1923], 108 Ohio St. 263; *but see City of Cleveland* v. *Betts* [1958], 168 Ohio St. 386), and that the phrase "general laws" does not include statutes that purport to grant or limit the home rule powers of a municipality when the statute does not prescribe a rule of conduct on citizens generally (*Village of West Jefferson* v. *Robinson* [1965], 1 Ohio St. 2d 113).

The third issue raised by appellant is that he was denied the equal protection of the law under the United States and the Ohio Constitutions, because the disparity in penalties between the state statute and the city ordinance infringed on (or chilled) his right to travel, which he asserts is a fundamental right under the United States Constitution.

We do not find that the right to travel by automobile within a state has been held to be a fundamental right, the restriction of which is subject to rigid judicial scrutiny. A right of such a fundamental or special nature requires that any

classification (or different treatment) of citizens be justified by a compelling state interest that has no alternative means of accomplishment, and only then by reasonable means specifically designed to protect the compelling state interest. *See, generally,* Note, *Of Interests, Fundamental and Compelling: The Emerging Constitutional Balance,* 57 Boston U. L. Rev. 462 (1977). *Shapiro* v. *Thompson* (1969), 394 U.S. 618, held that interstate travel is a fundamental right even though not directly mentioned in the United States Constitution. But no case has been cited to us, nor have we found any, in which the right to travel by automobile within a state has been held to be so fundamental that an infringement thereof by diversity of penalties for traffic violations has been subjected to judicial scrutiny, much less struck down as contrary to guarantees of equal protection.[3]

On the contrary, as illustrated by *Columbus* v. *Molt, supra,* the Ohio Supreme Court has repeatedly sustained the position that the home rule provisions of the Ohio Constitution granting municipalities "all powers of local self-government" prevail in the regulation of vehicular traffic over requirements of uniform statewide operation.[4] On the other hand, in such other matters as the regulation of criminal conduct and business hours, the requirements of uniform statewide application prevail over the home rule powers.[5]

Equal protection is satisfied if legislation applies alike to all persons within a class, the definition of which is reasonable rather than arbitrary or capricious, and provided that the class has a real and substantial relationship to the health, safety and

---

[3] The issue was not presented, briefed or argued, and accordingly we do not decide, whether constitutional requirements of equal protection are violated by reason of the choice that the arresting officer has between charging the reckless driver under the statute or under the ordinance, a choice without guidelines and susceptible to arbitrariness and capriciousness. *Cf. Porter* v. *Oberlin* (1965), 1 Ohio St. 2d 143, 152-54, in which a provision allowing a city council arbitrarily to dismiss or to order prosecution of charges of fair housing violation was struck down while the balance of the ordinance was upheld as a valid municipal regulation.

[4] *Cincinnati Motor Transp. Assn.* v. *Lincoln Heights* (1971), 25 Ohio St. 2d 203; *Village of West Jefferson* v. *Robinson, supra; Toledo* v. *Best, supra; Village of Struthers* v. *Sokol, supra; Village of Perrysburg* v. *Ridgway* (1923), 108 Ohio St. 245.

[5] For example, *City of Cleveland* v. *Betts* (1958), 168 Ohio St. 386 (carrying concealed weapons); *City of Cincinnati* v. *Correll* (1943), 141 Ohio St. 535 (barbershop hours); *City of Cincinnati* v. *Coy* (1962), 115 Ohio App. 478 (obscenity laws).

62

welfare of the public. *Cincinnati Motor Transp. Assn.* v. *Lincoln Heights* (1971), 25 Ohio St. 2d 203; *State* v. *Buckley* (1968), 16 Ohio St. 2d 128; *Porter* v. *Oberlin* (1965), 1 Ohio St. 2d 143. Appellant does not argue that he was treated differently from any other member of the class comprised of drivers geographically subject to the Cincinnati Code. We find that the creation of such a class has a substantial relationship to the health, safety and welfare of the public and that it is reasonably defined. It is sensible to allow more densely populated municipalities to determine their own traffic regulations as distinguished from those established for less heavily travelled areas. Territorial uniformity is not a constitutional requirement. *Cf. Salsburg* v. *Maryland* (1954), 346 U.S. 545 (different systems of courts for cities and for rural areas).

We find no merit in the single assignment of error. We affirm.

*Judgment affirmed.*

PALMER, P. J., and BETTMAN, J., concur.