COLDWELL BANKER RESIDENTIAL REAL ESTATE SERVICES, INC., APPELLEE, *v.* BISHOP, SUPERINTENDENT, ET AL., APPELLANTS.

(No. C-840601—Decided September 4, 1985.)

*Strauss, Troy & Ruehlmann Co., L.P.A., Alan C. Rosser* and *Douglas E. Duckett,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Lawrence D. Pratt,* for appellants.

*Per Curiam.* This appeal emanates from the order of the Hamilton County Court of Common Pleas granting summary judgment in favor of plaintiff-appellee Coldwell Banker (a residential real estate broker) on its declaratory judgment action against defendants-appellees (various agencies and individuals charged with enforcing Ohio laws regulating real estate brokers). In granting summary judgment for Coldwell Banker, the court below determined that the practices specified in Coldwell Banker's complaint for declaratory judgment constitute violations of R.C. 4735.18(N) and that R.C. 4735.18(N) is unconstitutional and

thereby unenforceable against Coldwell Banker. Defendants now appeal, claiming in a single assignment of error that the trial court wrongly granted summary judgment for Coldwell Banker because R.C. 4735.18(N) is constitutional. Appellee Coldwell Banker advances an assignment of error as well, asserting that even if R.C. 4735.18(N) is constitutional, the conduct specified in its complaint for declaratory judgment does not violate R.C. 4735.18(N).

R.C. 4735.18(N), the statute around which this case revolves, states:

"The superintendent of real estate may, upon his own motion, investigate the conduct of any licensee. The Ohio real estate commission shall suspend or revoke the license of any licensee who, in his capacity as a real estate broker or salesman, or limited real estate broker or salesman, or in handling his own property, is found guilty of:

"* * *

"(N) Having offered anything of value other than the consideration recited in the sales contract as an inducement to a person to enter into a contract for the purchase or sale of real estate or having offered real estate or the improvements thereon as a prize in a lottery or scheme of chance * * *."

In its complaint Coldwell Banker, a subsidiary of Sears, Roebuck & Company, questions whether the following specifically enumerated conduct violates R.C. 4735.18(N):

"Coldwell, in conjunction with Sears, has implemented a home buyer's discount program pursuant to which the buyer of a home through Coldwell is provided a book of coupons permitting the home buyer to purchase specified merchandise and services from Sears at a discount within a certain period of time after the closing of the real estate sale. This program, the Sears Home Buyer's Savings Program (the 'Sears Savings Program') is in operation in many states, including the State of Ohio.

Under the program, Coldwell presents the coupon book to a purchaser of a home at or after the closing. If a home buyer later avails himself of the opportunity to purchase Sears products or services at a discount, the discount is granted solely by Sears, not by Coldwell. "* * *

"In each transaction where Coldwell is to provide a coupon book to the purchaser, the sales contract recites the following language:

" 'Purchaser and owner acknowledge and agree that as part of the consideration for this contract, [Coldwell] will provide purchaser with a Sears "Home Buyer's Savings Book," entitling purchaser to certain discounts on the purchase of Sears merchandise.' "

We are called upon by this appeal to answer two questions: (1) Does the afore-quoted conduct by Coldwell Banker violate R.C. 4735.18(N)? and (2) Does the case raise no genuine issues of material fact and entitle Coldwell Banker to a judgment in its favor as a matter of law because R.C. 4735.18(N) is unconstitutional as applied?

Responding initially to the first question, we find that the conduct regarding which Coldwell Banker seeks a declaratory judgment does not violate the prohibitions specified in R.C. 4735.18(N). In interpreting R.C. 4735.18(N), we are guided by two firmly established principles of statutory construction. Where the language of a statute is plain and unambiguous, the words employed are to be interpreted in accordance with their ordinary meaning. *Brown* v. *Martinelli* (1981), 66 Ohio St. 2d 45, 48-49 [20 O.O.3d 38]; *Cleveland Trust Co.* v. *Eaton* (1970), 21 Ohio St. 2d 129, 138 [50 O.O.2d 354]; *Sears* v. *Weimer* (1944), 143 Ohio St. 312, 316 [28 O.O. 270]. Additionally, "where constitutional questions are raised, courts will liberally construe a statute to save it from constitutional infirmities." *State* v. *Sinito* (1975), 43 Ohio St. 2d 98, 101 [72

O.O.2d 54]; *United Air Lines* v. *Porterfield* (1971), 28 Ohio St. 2d 97, 100 [57 O.O.2d 288]; *Cooperative Legislative Commt.* v. *Pub. Util. Comm.* (1964), 177 Ohio St. 101, 103 [29 O.O.2d 266].

R.C. 4735.18(N) specifically prohibits real estate brokers from offering "anything of value other than the consideration recited in the sales contract as an inducement to a person to enter into a contract for the purchase or sale of real estate * * *." Coldwell Banker's declaratory judgment action concerns the propriety of its actions when in its sales contracts it recites that the Sears Home Buyer's Savings Book constitutes part of the consideration for the purchase of real estate. Defendants-appellants argue that the disclosure exception of the statute only applies to the "normal" consideration in the course of a real estate transaction which passes between buyer and seller — not to any consideration passing between broker and buyer. Defendants misread R.C. 4735.18(N), rendering an interpretation which is both contrary to the ordinary meaning of the language of the statute and which would ultimately be declared an unconstitutional abridgement of Coldwell Banker's First Amendment rights. Initially, the key question is whether the legislature by use of the term "consideration" specifically limited the passage of things of value as being between only the buyer and seller.

In general, if the consideration given is sufficient to support a contract it does not matter from or to whom it moves. The consideration may be given to the promisor or a third person or may be given by the promisee or a third person. The Restatement of the Law 2d, Contracts (1981) 172, Section 71(4) states: "The performance or return promise [*i.e.*, the consideration] may be given to the promisor or to some other person. It may be given by the promisee or by some other person." See, also, 1 Williston, Contracts (3 Ed. 1957) 451-454, 519-521, Sections 114, 125; 17 American Jurisprudence 2d (1964, Supp. 1984), Contracts, Section 94. Because the legislature, in R.C. 4735.18(N), did not impose any limitations on the consideration subject to the statute's disclosure exception, and consideration by its definition can emanate from a third person, Coldwell Banker can, within the strictures of R.C. 4735.18(N), properly provide consideration for the sale of real estate between a buyer and seller so long as it recites the consideration in the real estate sales contract.

In addition, even were we to find the defendants-appellants' interpretation of R.C. 4735.18(N) reasonable, the interpretation would render the statute an unconstitutional, unenforceable abridgement of Coldwell Banker's First Amendment right to engage in commercial speech (as will be further explicated in this decision, *infra*). Since the interpretation of the statute advanced by Coldwell Banker and affirmed in this decision is a reasonable constitutional alternative to that offered by defendants-appellants, the rules of statutory construction dictate that we adhere to the construction which will save the statute from constitutional infirmity. We accordingly determine that the court below wrongly found the conduct set forth in Coldwell Banker's complaint for declaratory judgment to be in violation of R.C. 4735.18(N). Appellee Coldwell Banker's assignment of error has merit.

Turning next to defendants-appellants' assignment of error, in which they assert that the trial court incorrectly found R.C. 4735.18(N) unconstitutional as applied upon Coldwell Banker's motion for summary judgment, we parenthetically note that Coldwell Banker admits that the statute is constitutional if interpreted in the way we have construed it. A party challenging a statute's constitutionality has a heavy burden to meet.

"* * * [W]hen an enactment of the General Assembly is challenged, the challenger must overcome a strong presumption of constitutionality. See *American Cancer Society, Inc.,* v. *Dayton,* 160 Ohio St. 114, 121 [51 O.O. 32] (1953). The legal duty imposed upon the judiciary was succinctly stated in paragraph one of the syllabus in *State, ex rel. Dickman,* v. *Defenbacher, Dir.,* 164 Ohio St. 142 [57 O.O. 134] (1955):

" 'An enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible.' " *State, ex rel. Jackman,* v. *Court of Common Pleas* (1967), 9 Ohio St. 2d 159, 161 [38 O.O.2d 404]. See, also, *Monroeville* v. *Ward* (1971), 27 Ohio St. 2d 179 [56 O.O.2d 110].

Responding seriatim to the various constitutional challenges advanced against R.C. 4735.18(N), we first consider whether the statute violates the substantive Due Process Clauses of the Ohio and United States Constitutions. Defendants-appellants argue in response to the due process challenge that R.C. 4735.18(N) is a valid exercise of the police power conferred upon the legislature. As such we must review the statute in light of the following pronouncement by the Supreme Court:

"Laws or ordinances passed by virtue of the police power which limit or abrogate constitutionally guaranteed rights must not be arbitrary, discriminatory, capricious or unreasonable and must bear a real and substantial relation to the object sought to be obtained, namely, the health, safety, morals or general welfare of the public.

"* * *

"If an enactment is referable to the police power, to be valid, the court must be able to say that it tends in some substantial degree to the prevention of offenses, or the preservation of the health, morals, safety or general welfare of the public. Therefore, if it is apparent that there is no plausible, reasonable and substantial connection between the provisions of the act and the supposed evils to be suppressed, there exists no authority for its enactment." *Cincinnati* v. *Correll* (1943), 141 Ohio St. 535, 539 [26 O.O. 116]. See, also, *Toledo Disposal Co.* v. *State* (1914), 89 Ohio St. 230, 235; *Auto Reality Inc.* v. *Brown* (1971), 27 Ohio App. 2d 77, 80-81 [56 O.O.2d 253].

In the instant case defendants assert that R.C. 4735.18(N) furthers the dual purposes of maintaining high standards of professionalism among real estate brokers and of focusing consumers on what they are receiving in their purchases of real estate. We find both goals to be valid attempts at preservation of the general welfare of the public and further find that the regulation enunciated in R.C. 4735.18(N) bears "a real and substantial relation" to the goals sought to be obtained.

The character and ethics of real estate brokers are important subjects of government regulation. There is a valid state interest in promoting the character, honesty and intellectual competence of real estate brokers. See, generally, *Clarke* v. *Hartley* (1982), 7 Ohio App. 3d 147, 152; *In re Russo* (1958), 107 Ohio App. 238, 243 [8 O.O.2d 173]. Likewise, purchasers of real estate should be aware of all they are receiving in exchange for their purchases. Requiring written disclosure of all consideration a purchaser of real estate is to receive results in both the prevention of "under the table" dealings by real estate brokers and a written record of the consideration to be provided a real estate purchaser.

The same analysis saves R.C. 4735. 18(N) from constitutional infirmity under the Equal Protection Clauses of the Ohio and United States Constitutions:

"Simply stated, the test is that unequal treatment of classes of persons by a state is valid only if the state can show that a rational basis exists for the inequality, unless the discrimination impairs the exercise of a fundamental right or establishes a suspect classification. See, *e.g., McGowan* v. *Maryland* (1961), 366 U.S. 420 [17 O.O.2d 151], for the traditional scrutiny test; see, *e.g., Shapiro* v. *Thompson* (1969), 394 U.S. 618; *Harper* v. *Virginia Bd. of Elections* (1966), 383 U.S. 663; *Griswold* v. *Connecticut* (1965), 381 U.S. 479, for a discussion of 'fundamental interest'; and see, *e.g., Graham* v. *Richardson* (1971), 403 U.S. 365; *Loving* v. *Virginia* (1967), 388 U.S. 1; *Oyama* v. *California* (1948), 322 U.S. 633. * * *

"* * *

"* * * Ordinarily, under the rational basis requirement, any classification based 'upon a state of facts that reasonably can be conceived to constitute a distinction, or differences in state policy * * *' will be upheld. *Allied Stores of Ohio* v. *Bowers* (1959), 358 U.S. 522, 530." *Bd. of Edn.* v. *Walter* (1979), 58 Ohio St. 2d 368, 373-376 [12 O.O.3d 327], certiorari denied (1980), 444 U.S. 1015. See, also, *State, ex rel. Soller,* v. *West Muskingum Bd. of Edn.* (1972), 29 Ohio St. 2d 148, 151 [58 O.O.2d 347]; *Cincinnati* v. *Shannon* (1979), 64 Ohio App. 2d 58, 61-62 [18 O.O.3d 40]; *Roth* v. *Public Employees Retirement Bd.* (1975), 44 Ohio App. 2d 155, 158-159 [71 O.O.2d 240].

Since requiring disclosure of the consideration provided in a contract for the sale and purchase of real estate does not impair the exercise of a "fundamental right," and since real estate brokers do not constitute a "suspect classification," the rational basis test applies for determining the validity of R.C. 4735.18 (N) under the Equal Protection Clause. As previously explained, the state has a special interest in maintaining high standards of professionalism among real estate brokers because of the magnitude of the transactions (both in an economic and a personal sense) with which they are involved. A rational basis therefore exists for applying the differential regulation of R.C. 4735.18(N) to real estate brokers.

With respect to the final constitutional challenge which was meaningfully advanced against R.C. 4735.18(N) in the court below (*i.e.,* that the statute represents an unconstitutional abridgement of Coldwell Banker's right to engage in free speech), we find that the statute as interpreted by us does not violate the United States Constitution's First Amendment. We interpret R.C. 4735.18(N) as requiring additional speech through disclosure rather than as prohibiting speech. In *Zauderer* v. *Office of Disciplinary Counsel* (1985), 85 L. Ed. 2d 652, 672-673, the Supreme Court considered the distinction between disclosure requirements and prohibitions of commercial speech:

"* * * Because the extension of First Amendment protection to commercial speech is justified principally by the value to consumers of the information such speech provides, see *Virginia Pharmacy Board* v. *Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748 (1976), appellant's constitutionally protected interest in *not* providing any particular factual information in his advertising is minimal. Thus, in virtually all our commercial speech decisions to date, we have emphasized that because disclosure requirements trench much more narrowly on an advertiser's interests than do flat prohibitions on speech, 'warning[s] or disclaimer[s] might be appropriately required . . . in order to dissipate the possibility of consumer confusion or deception.' *In re R.M.J.,* 455 U.S., at 201. Accord, *Central Hudson Gas & Electric,* 447 U.S., at 565; *Bates* v. *State Bar of Arizona,* 433 U.S., at 384; *Virginia Pharmacy Bd., supra,* at 772, n. 24.

"We do not suggest that disclosure requirements do not implicate the advertiser's First Amendment rights at all. We recognize that unjustified or unduly burdensome disclosure requirements might offend the First Amendment by chilling protected commercial speech. But we hold that an advertiser's rights are adequately protected as long as disclosure requirements are reasonably related to the State's interest in preventing deception of consumers."

And at 673, note 14, the court stated:

"We reject appellant's contention that we should subject disclosure requirements to a strict 'least restrictive means' analysis under which they must be struck down if there are other means by which the State's purposes may be served. Although we have subjected outright prohibitions on speech to such analysis, all our discussions of restraints on commercial speech have recommended disclosure requirements as one of the acceptable less restrictive alternatives to actual suppression of speech. See, *e.g., Central Hudson Gas & Electric,* 447 U.S., at 565. Because the First Amendment interests implicated by disclosure requirements are substantially weaker than those at stake when speech is actually suppressed, we do not think it appropriate to strike down such requirements merely because other possible means by which the State might achieve its purposes can be hypothesized." (Emphasis *sic.*)

As previously explicated, we find that the disclosure requirements of R.C.

4735.18(N) are reasonably related to the state's interest in preventing consumer deception and that the statute therefore withstands a First Amendment attack.

However, were we to interpret R.C. 4735.18(N) as prohibiting speech, as would be required under defendants-appellants' interpretation of the statute,[1] it would be unconstitutional under the First Amendment. After initially reaffirming the longstanding rule that commercial speech is protected by the First Amendment, the Supreme Court in *Central Hudson Gas & Elec. Corp.* v. *Pub. Serv. Comm. of New York* (1980), 447 U.S. 557, 564, enunciated the test governing the restriction of commercial speech:

"If the communication is neither misleading nor related to unlawful activity, the government's power is more circumscribed. The State must assert a substantial interest to be achieved by restrictions on commercial speech. Moreover, the regulatory technique must be in proportion to that interest. The limitation on expression must be designed carefully to achieve the State's goal. Compliance with this requirement must be measured by two criteria. First, the restriction must directly advance the state interest involved; the regulation may not be sustained if it provides only ineffective or remote support for the government's purpose. Second, if the governmental interest could be served as well by a more limited restriction on commercial speech, the excessive restrictions cannot survive."

Considering the above-quoted test in

---

[1] Under their interpretation of R.C. 4735.18(N), defendants-appellants admit that the conduct of Coldwell Banker in merely giving the Sears coupon book to buyers of real estate does not violate the statute. Transfer of the coupon book is prohibited only when it acts as an "inducement" to the purchaser to enter into the contract for purchase of real estate. In order to act as an inducement to the purchaser to enter into the contract, it must be communicated to the buyer that he is entitled to receipt of the coupon book upon entering the contract. Therefore, what the statute restricts is the communication by Coldwell Banker to the prospective purchaser (a protected form of commercial speech under the First Amendment) of his potential entitlement to a Sears coupon book.

light of the Supreme Court's ruling in *Virginia Pharmacy Bd.* v. *Virginia Consumer Council* (1976), 425 U.S. 748, on the constitutionality of state regulation of advertising by pharmacists, we find that the philosophical underpinnings of the Supreme Court's recent decisions would render defendants-appellants' interpretation of R.C. 4735.18 (N) unconstitutional, while upholding the constitutionality of our interpretation of the statute. Cf. *Coldwell Banker, Inc.* v. *Clayton* (1985), 105 Ill. 2d 389, 475 N.E.2d 536, in which the Illinois Supreme Court found an Illinois statute, which lacked R.C. 4735.18(N)'s disclosure exception, to be in violation of the First Amendment's guarantee of free speech. Indicative of both the Supreme Court's abhorrence for the prohibition of commercial speech and its inclination toward disclosure requirements instead is the following explanation of the *Virginia Pharmacy Bd.* decision, contained in *Bates* v. *State Bar of Arizona* (1977), 433 U.S. 350, 365:

"Although acknowledging that the State had a strong interest in maintaining professionalism among pharmacists, this Court concluded that the proffered justifications were inadequate to support the advertising ban. High professional standards were assured in large part by the close regulation to which pharmacists in Virginia were subject. *Id.,* at 768. And we observed that 'on close inspection it is seen that the State's protectiveness of its citizens rests in large measure on the advantage of their being kept in ignorance.' *Id.,* at 769. But we noted the presence of a potent alternative to this 'highly paternalistic' approach: 'That alternative is to assume that this information is not in itself harmful, that people will perceive their own best interests if only they are well enough informed, and that the best means to that end is to open the channels of communication rather than to close them.' *Id.,* at 770. The choice between the dangers of suppressing information and the dangers arising from its free flow was seen as precisely the choice 'that the First Amendment makes for us.' *Ibid.* See also *Linmark Associates, Inc.* v. *Willingboro,* 431 U.S. 85, 97 (1977)."

Resultantly, we find the conduct set forth in Coldwell Banker's complaint for declaratory judgment not to be violative of R.C. 4735.18(N) and further find that R.C. 4735.18(N) is constitutional as applied to the facts of this case. We sustain both defendants-appellants' and Coldwell Banker's assignments of error.

We therefore affirm the trial court's decision to grant summary judgment for Coldwell Banker, but find that the trial court reached the correct result for the wrong reasons. The declaratory judgment should have been entered as follows: (1) Coldwell Banker's subject conduct is not violative of R.C. 4735.18 (N); (2) R.C. 4735.18(N) as applied to the factual scenario herein is constitutional.

*Judgment accordingly.*

KEEFE and KLUSMEIER, JJ., concur.

BLACK, P.J., dissents.

BLACK, P.J., dissenting. I respectfully dissent. In my judgment, Coldwell Banker's providing the purchaser with a Sears "Home Buyer's Savings Book" (entitling purchaser to discounts on purchases of Sears merchandise) violates R.C. 4735.18(N). Further, that subsection of the statute is a constitutionally valid regulation. I would enter final judgment to that effect. A brief, summary statement of my reasons follows.

Extensive search has not disclosed any Ohio decision construing R.C. 4735.18(N), reported or unreported.

A fair interpretation of the statute, in my opinion, is that it prohibits a broker's offer to furnish a discount

scheme as an added inducement to the prospective buyer to sign the real estate contract, over and above the consideration recited in the contract. I agree with the majority's conclusion that the offer or promise qualifies as "consideration" even though it flows from a third party; ·we must use the customary, common-law meaning of that term, in the absence of any statutory definition. However, I do not believe the inquiry ends there. In my opinion, the "consideration" referred to in the subdivision is *the* "consideration recited in the sales contract," by which is meant the promises or things of value that support the real estate transaction. In other words, the statute is designed to prohibit offers by real estate licensees (brokers or salesmen) to furnish anything of value as an inducement for a buyer to sign a real estate contract, other than (or in addition to) the consideration flowing between buyer and seller as specifically recited in the contract.

This conclusion springs from my view that subdivision (N) is not clear on its face, but ambiguous. Interpretation requires us to look at the several factors listed in R.C. 1.49, which in turn lead us to the following deductions: (1) the objects of the subdivision are (a) to keep the broker a broker and not allow him to become a participant in the real estate transaction, and (b) to protect the ordinary house buyer from being distracted and perhaps misled by extraneous considerations; (2) the consequence of this interpretation is to foreclose a flood of flashy inducements that would tend to convert real estate transactions into prize-winning games, whether the inducements are disclosed or undisclosed in the real estate contract; (3) this prohibition is closely related to the other prohibition in subdivision (N), which forbids the offering of real estate or improvements "as a prize in a lottery or scheme of chance"; (4) the legislative history of subdivision (N) suggests that if the legislature had desired simply to require a disclosure of the inducement by reciting it in the contract, the legislature could have used language to that effect ("undisclosed"), as was done in subdivisions (M) and (O); and (5) the administrative construction of subdivision (N) is shown to be consistent with this interpretation by *American Homeowners Assn., Inc.* v. *Ohio Dept. of Commerce* (Mar. 21, 1974), Cuyahoga App. No. 32891, unreported, and by the pronouncement dated August 25, 1983, by the Ohio Real Estate Commission (communicated to Coldwell Banker by letter of April 12, 1984). These deductions lead me to conclude that all broker-offered inducements are prohibited if they go beyond the consideration flowing between buyer and seller as set forth in the contract.

The third-party inducement cannot be made a part of "the consideration recited in the sales contract" by the simple device of a so-called agreement between the seller and the buyer.

The prohibition against offering extraneous inducements is constitutional. A legislative regulation is presumed to be constitutional unless its invalidity is clearly demonstrated, *Ohio Pub. Interest Action Group, Inc.* v. *Pub. Util. Comm.* (1975), 43 Ohio St. 2d 175 [72 O.O.2d 98], paragraph four of the syllabus, and in this case, Coldwell Banker has failed to demonstrate clear incompatibility with any constitutional protection. R.C. 4735.18(N) does not violate substantive due process because its purposes (recited above) fall within the scope of the state's police power; the subdivision is reasonably designed to accomplish those purposes (essentially consumer protection), *Ohralik* v. *Ohio State Bar Assn.* (1978), 436 U.S. 447; and the subdivision is not arbitrary, discriminatory, oppressive or otherwise unreasonable. It does not violate the Equal Protection Clause because it applies uniformly to all

real estate licensees, even though it is not uniformly applicable to all persons performing the middleman function of a broker. See *Nebbia* v. *New York* (1933), 291 U.S. 502, 529-530; and *Benjamin* v. *Columbus* (1957), 167 Ohio St. 103, 116-118 [4 O.O.2d 113]. Finally, contrary to the conclusion of my brothers, the statute as interpreted in this dissent does not violate Coldwell Banker's right to free speech. That right is to communicate "commercial speech," which is not entitled to the same degree of protection as other forms of speech. Since the offer of extraneous inducements is reasonably regulated by the statute, the communication of this offer is merely a component of the forbidden conduct. Coldwell Banker's right to advertise its services as a broker performing services allowed by Ohio law is not infringed.