SANTER, SUPERINTENDENT, APPELLEE, *v.* GLOBE PUBLICATIONS, INC., APPELLANT.

(No. C-840963—Decided December 24, 1985.)

*Anthony J. Celebrezze, Jr.*, attorney general, and *Kevin J. Reis,* for appellee.

*Cobb & Oldfield, Timothy H. Wainscott* and *David E. Davidson,* for appellant.

KLUSMEIER, J. This appeal involves the question of whether defendant-appellant, Globe Publications, Incorporated, also known as Globe Rentals and Globe Home Rentals ("Globe"), is conducting business as a "real estate broker," as defined in R.C. 4735.01(A)

(7), (9), or (10),[1] and if so, whether R.C. 4735.01(A)(10) is unconstitutional. We conclude that Globe is acting as a real estate broker and, as such, cannot conduct business without first being licensed pursuant to R.C. Chapter 4735. We further find that R.C. 4735.01 (A)(10) does not violate Globe's constitutional guarantees of due process, equal protection and free speech.

Plaintiff-appellee, Charles R. Santer, Superintendent, Division of Real Estate, Department of Commerce ("superintendent"), filed a complaint on June 24, 1984, seeking a temporary injunction, a temporary restraining order and a permanent injunction prohibiting Globe from engaging in the real estate business without first being licensed pursuant to R.C. 4735.02 and 4735.17. Following a hearing on all issues, the lower court ruled that Globe was acting as a real estate broker as defined in R.C. 4735.01(A)(7), (9), and (10), and that it was therefore permanently enjoined from conducting business until it conformed with the licensing requirements of the statute. The trial court also found that R.C. 4735.01(A)(10) is not in conflict with the Ohio or United States Constitution. Globe filed a timely notice of appeal to this court.

Globe is a Kentucky corporation engaged in the business of both collecting and selling information concerning rental properties. After the information is gathered by Globe it is sold to prospective tenants in the form of a subscription agreement called a "policy" for a fee of $70 and the agreement is valid for sixty days from the date of purchase. Globe advertised its services in local newspapers and the Cincinnati Bell Telephone Directory. The newspaper advertisements stated a very brief description of the rental properties, including houses and apartments, at various monthly rental prices. However, the advertisements contained no information regarding the location of the property or the name and telephone number of the landlord. Rather, the advertisements, which always included the claim, "100's UNADVERTISED," merely provided that further information could be obtained by contacting Globe at its listed telephone number.

A prospective tenant was required to sign a policy and pay the $70 fee before Globe would provide him with a computer printout containing a list of rental properties theoretically matching the specifications given by the tenant. Thereafter, the computerized listings

---

[1] R.C. 4735.01 provides, in pertinent part:

"As used in sections 4735.01 to 4735.23 of the Revised Code:

"(A) 'Real estate broker' includes any person, partnership, association, or corporation, foreign or domestic, who for another, whether pursuant to a power of attorney or otherwise, and who for a fee, commission, or other valuable consideration, or with the intention, or in the expectation, or upon the promise of receiving or collecting a fee, commission, or other valuable consideration:

"* * *

"(7) Assists or directs in the procuring of prospects or the negotiation or closing of any transaction, other than mortgage financing, which does or is calculated to result in the sale, exchange, leasing, or renting of any real estate;

"* * *

"(9) Is engaged in the business of charging an advance fee or contracting for collection of a fee in connection with any contract whereby he undertakes primarily to promote the sale, exchange, purchase, rental, or leasing of real estate through its listing in a publication issued primarily for such purpose, or for referral of information concerning such real estate to brokers, or both;

"(10) Collects rental information for purposes of referring prospective tenants to rental units or locations of such units and charges the prospective tenants a fee.

"* * *"

were updated on a daily basis and were made available to the tenant upon request for the next sixty days. Globe acquired the rental information to develop such lists by contacting landlords, property management companies, realtors and other likely sources. The information solicited from prospective lessors and made available to Globe's customers included: the nature of the property for rent; the date the property was available; the amount of the rent; whether the property was furnished or unfurnished; the number of bedrooms; whether children or pets were permitted; the address of the property and the lessor's telephone number; and other information, such as whether the property had a basement, fireplace, garage, swimming pool or a fenced-in yard.

The policy, drafted by Globe and signed by its customers, expressly provided that Globe "is not the agent of any landlord and that any error in the information * * * is due to the description given by the landlord to Globe Rentals." Furthermore, the policy provided that Globe made "no guarantee that that [the] policyholder will rent any of the properties described * * *." *Id.* Nevertheless, Globe does not negotiate or draft rental contracts or leases, does not receive payments from the prospective

lessors of the property, does not receive rental payments from lessees for lessors, and does not appraise property.

Globe assigns two errors. In its first assignment of error, Globe maintains that the trial court erred in enjoining it from selling rental lists without a real estate license because R.C. 4735.01(A)(10) violates the constitutional protections of commercial speech, equal protection and due process. Globe's second assignment of error is that the trial court erred in finding that Globe's business activities are encompassed within the definition of a real estate broker, as set forth in R.C. 4735.01(A)(10).[2] We have elected to address Globe's second assignment of error first.

Effective April 8, 1977, R.C. 4735.01 and 4735.99 were amended and newly enacted R.C. 4735.021 went into effect. R.C. 4735.01, which defines the term "real estate broker," was amended to include subsection (A)(10) which adds to the definition of broker a person who "[c]ollects rental information for purposes of referring prospective tenants to rental units or locations of such units and charges the prospective tenants a fee." In order to regulate advance fee rental locators, the General Assembly enacted R.C. 4735.021.[3] Moreover, R.C. 4735.99 designates a violation of either

---

[2] In its assignment of error, Globe does not challenge the trial court's decision that Globe's conduct came within the definition of a real estate broker as set forth in R.C. 4735.01(A)(7) and (9). In *State* v. *Rentex* (1977), 51 Ohio App. 2d 57, the court held that the definition of a real estate broker, as set forth in R.C. 4735.01(A)(7) and (9), does not encompass an activity which consists of merely selling descriptions of available rental property. At oral argument counsel for Globe indicated that his assignment of error was intended to encompass R.C. 4735.01(A)(7), (9), and (10), and he requested that we address all three subsections. We decline to do so for the following reasons. First, R.C. 4735.01(A) is obviously written in the disjunctive, and we

are of the opinion that Globe's conduct falls within the definition of "real estate broker" as provided in R.C. 4735.01(A)(10). Thus, it is irrelevant whether Globe's activities come within R.C. 4735.01(A)(7) and (9) as well. Second, as a general principle, we hesitate to recast appellants' assignments of error without the benefit of additional argument and briefing, since under App. R. 12(A), "[t]he appeal shall be determined on its merits on the assignments of error set forth in the briefs * * *."

[3] R.C. 4735.021 states:

"(A) Every licensee who is engaged in the business of referring prospective tenants to possible rental units or locations and who

R.C. 4735.02 or 4735.021 as a misdemeanor of the first degree. R.C. 4735.02 provides that "[n]o person * * * or corporation shall act as a real estate broker * * * without first being licensed as provided in Chapter 4735. of the Revised Code."

Globe admits that it gathers and sells rental information and that it charges prospective tenants a fee. However, it denies that it "refers" those prospective tenants to rental units or locations of such units. Globe insists that merely because it "makes available the aforementioned information to the public" does not mean that it refers tenants to landlords in the technical "real estate sense." We are unpersuaded.

We are of the opinion that Globe "refers" prospective tenants to rental units when it provides, in exchange for $70, information including the address of the property, the landlord's name, address and phone number and other pertinent information. Globe's conduct constitutes a "referral" because it directs prospective tenants to a person or place where further information can be obtained. Common sense dictates that a rental location business involves a referral of the prospective tenant to a rental unit which meets the tenant's specifications, after the tenant pays his fee. It is clear that a prospective tenant is buying information for the express purpose of obtaining rental property. There is no doubt that the tenant expects to be referred by Globe to that property. The second assignment of error is overruled.

We now turn to the first assignment of error, Globe's constitutional attack on R.C. 4735.01(A)(10). It is well-established that an Act of the General Assembly is entitled to a strong presumption of constitutionality. *State, ex rel. Jackman,* v. *Court of Common Pleas* (1967), 9 Ohio St. 2d 159 [38 O.O.2d 404]. The reason for this time-honored presumption is that it prohibits one branch of state government from encroaching on the duties and prerogatives of another. *State* v. *Renalist, Inc.* (1978), 56 Ohio St. 2d 276 [10 O.O.3d 408]. However, this strong presumption is rebuttable, but only by demonstrating the existence of unconstitutionality beyond a reasonable doubt. *Pack* v. *Cleveland* (1982), 1 Ohio St. 3d 129; *State, ex rel. Dickman,* v. *Defenbacher* (1955), 164 Ohio St. 142 [57 O.O. 134]. Moreover, when a statute has been enacted pursuant to a state's police power, a party challenging that statute must show a clear abuse of that power in order for a reviewing court to substitute its own judgment for legislative discretion. *Dayton* v. *S.S. Kresge Co.* (1926), 114 Ohio St. 624. Finally, when a statute is challenged as being unconstitutional as applied, "the burden rests upon the party making such attack to present clear and convincing evidence of a presently existing state of facts which

---

charges the prospective tenants a fee shall enter into a written contract with any prospective tenant and shall give him a copy of the contract. The licensee shall disclose in the contract the manner in which the listings of units have been obtained. All contracts entered into pursuant to this section shall stipulate that any fee charged in excess of ten dollars shall be repaid or refunded to the prospective tenant, upon demand, but no sooner than thirty days after the contract has been entered into and no later than sixty days after the contract has been entered into, if he does not obtain a rental conforming to his specifications through the listing furnished by the licensee. If the information concerning rentals furnished by the licensee is not current or accurate, the full fee shall be repaid or refunded to the prospective tenant upon demand.

"(B) No licensee shall refer a prospective tenant to any property without the consent of the owner or to any nonexistent address."

makes the act unconstitutional and void when applied thereto." *Belden* v. *Union Cent. Life Ins. Co.* (1944), 143 Ohio St. 329 [28 O.O. 295], paragraph six of the syllabus.

### Substantive Due Process

The superintendent argues in response to the due process challenge that R.C. 4735.01(A)(10) is a valid exercise of the police power conferred upon the legislature. As such we are called upon to review the statute in light of the following seasoned rule of law:

"Laws or ordinances passed by virtue of the police power which limit or abrogate constitutionally guaranteed rights must not be arbitrary, discriminatory, capricious or unreasonable and must bear a real and substantial relation to the object sought to be obtained, namely, the health, safety, morals or general welfare of the public.

"* * *

"If an enactment is referable to the police power, to be valid, the court must be able to say that it tends in some substantial degree to the prevention of offenses, or the preservation of the health, morals, safety or general welfare of the public. Therefore, if it is apparent that there is no plausible, reasonable and substantial connection between the provisions of the act and the supposed evils to be suppressed, there exists no authority for its enactment." *Cincinnati* v. *Correll* (1943), 141 Ohio St. 535, 539 [26 O.O. 116]. See, also, *Toledo Disposal Co.* v. *State* (1914), 89 Ohio St. 230; *Auto Reality Inc.* v. *Brown* (1971), 27 Ohio App. 2d 77, 80-81 [56 O.O.2d 253].

Section 3 of Am. H. B. No. 23 reveals that the purpose for enacting R.C. 4735.01(A)(10) was that "citizens * * * [were] being exposed to deception and fraud in connection with their efforts to secure rental housing without the protections afforded by Ohio's real estate licensing laws and [that] present remedies * * * [did] not act as an effective deterrent to [such] improper or illegal conduct." 137 Ohio Laws, Part I, 1747. We find that the statute also furthers the following legitimate state interests: promoting competency, honesty and integrity on the part of all persons engaging in this business activity; creating a commercially reasonable basis upon which prospective tenants can rely upon the representations made by rental locators; and establishing financial accountability of rental locators to their dissatisfied customers.

The character and business practices of real estate brokers are important subjects of government regulation. *Coldwell Banker Residential Real Estate Serv., Inc.* v. *Bishop* (1985), 26 Ohio App. 3d 149. There is a valid state interest in promoting the character, honesty, and intellectual competence of real estate brokers. See *Clarke* v. *Hartley* (1982), 7 Ohio App. 3d 147; *In re Russo* (1958), 107 Ohio App. 238 [8 O.O. 2d 173]. Likewise, customers of advance fee rental locators are entitled to protection from the potentially deceptive practices of certain entrepreneurs who engage in sharp practices and overstep basic rules of fair play in the marketplace. We conclude that the dual purposes of the statute as well as the legitimate state interests in enforcing it are valid attempts toward preserving the general welfare of the public and that R.C. 4735.01(A)(10) bears "a real and substantial relation" to the goals sought to be obtained.

### Equal Protection

Globe contends that R.C. 4735.01 (A)(10) violates its right to equal protection of law under the Ohio and United States Constitutions. The Supreme Court of Ohio has set forth the following analysis:

"Simply stated, the test is that unequal treatment of classes of persons by a state is valid only if the state can show that a rational basis exists for the in-

equality, unless the discrimination impairs the exercise of a fundamental right or establishes a suspect classification. See, *e.g.*, *McGowan* v. *Maryland* (1961), 366 U.S. 420 [17 O.O.2d 151], for the traditional scrutiny test; see, *e.g.*, *Shapiro* v. *Thompson* (1969), 394 U.S. 618; *Harper* v. *Virginia Bd. of Elections* (1966), 383 U.S. 663; *Griswold* v. *Connecticut* (1965), 381 U.S. 479, for a discussion of 'fundamental interest'; and see, *e.g.*, *Graham* v. *Richardson* (1971), 403 U.S. 365; *Loving* v. *Virginia* (1967), 388 U.S. 1; *Oyama* v. *California* (1948), 322 U.S. 633. * * *

"* * *

"* * * Ordinarily, under the rational basis requirement, any classification based 'upon a state of facts that reasonably can be conceived to constitute a distinction, or differences in state policy * * *' will be upheld. *Allied Stores of Ohio* v. *Bowers* (1959), 358 U.S. 522, 530 [1 O.O.2d 342]." *Bd. of Edn.* v. *Walter* (1979), 58 Ohio St. 2d 368, 373-376 [12 O.O.3d 327], certiorari denied (1980), 444 U.S. 1015. See, also, *State, ex rel. Soller,* v. *West Muskingum Bd. of Edn.* (1972), 29 Ohio St. 2d 148 [58 O.O.2d 347]; *Cincinnati* v. *Shannon* (1979), 64 Ohio App. 2d 58, 61-62 [18 O.O.3d 40]; *Roth* v. *Public Employees Retirement Bd.* (1975), 44 Ohio App 2d 155, 158-159 [71 O.O. 2d 240].

In our view, requiring advance fee rental locators to obtain real estate licenses in order to operate in Ohio in no way impairs the existence of a "fundamental right." Clearly, advance fee rental locators do not constitute a "suspect classification." When a legislative enactment does not affect a fundamental right or establish a suspect class, it must be upheld if there exists *any* conceivable set of facts under which the classification rationally furthers a legitimate governmental objective. *Fort Hamilton-Hughes Memorial Hosp. Center* v. *Southard* (1984), 12 Ohio St. 3d 263. As previously explained, the state has several legitimate objectives and interests for requiring advance fee rental locators, like Globe, to become licensed real estate brokers prior to engaging in business in Ohio. Moreover, the statute furthers those legitimate interests and objectives. We conclude that a rational basis exists for requiring Globe to obtain a real estate license, pursuant to R.C. 4735.01(A)(10).

## Free Speech

Finally, Globe asserts that R.C. 4735.01(A)(10) abridges its right to engage in commercial speech. Commercial speech receives some constitutional protection under the First Amendment to the United States Constitution, *Bigelow* v. *Virginia* (1975), 421 U.S. 809, although it is accorded a lesser degree of protection than non-commercial speech. *Ohralik* v. *Ohio State Bar Assn.* (1978), 436 U.S. 447. Although an advertiser's interest in such speech is purely economic, the free flow of commercial information is indispensable for the well-informed allocation of economic resources. *Virginia State Board of Pharmacy* v. *Virginia Citizens Consumer Council* (1976), 425 U.S. 748. Nonetheless, a regulation of commercial speech may be upheld as not violative of the First Amendment if it complies with the following four-part test:

" 'In commercial speech cases, then, a four-part analysis has developed. At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.' " *Queensgate Investment Co.* v. *Liquor Control Comm.* (1982), 69 Ohio

St. 2d 361, 365 [23 O.O.3d 337] (citing *Central Hudson Gas & Electric Corp.* v. *Public Service Comm. of New York* [1980], 447 U.S. 557, 566).

Globe argues that its business is analogous to the services provided by an ordinary newspaper since it "merely advertises information concerning available rental properties." Globe further argues that the state's licensing requirement fails to advance directly the state's interest in protecting consumers from deceptive practices in the rental locator business. Globe reasons that the requirements for obtaining a real estate broker's license, as listed in R.C. 4735.07, or a real estate salesman's license, as outlined in R.C. 4735.09, while relevant to persons who negotiate sales of real property, are not germane to the actions of advance fee rental locators. Globe insists that R.C. 4735.07 and 4735.09, which generally set forth various character, education and training requirements, establish a scheme which is overly strict and overly broad, as applied to advance fee rental locators. Finally, Globe asserts that the statutes impose certain economic disincentives to the supply of information through the advertisement of available rental properties useful to the consumer in his search for housing.

We reject Globe's broad constitutional claims within the context of this case. The record reveals that the superintendent initiated the instant action against Globe after receiving several complaints from dissatisfied customers who, after paying Globe $70, did not find properties that met their specifications or discovered that the properties which were of interest to them had already been rented. In addition, an investigator for the Division of Real Estate testified that a Globe agent informed her over the telephone that Globe "guarantee[d] their service [and] that they guarantee[d] that they would find [her] a place to live." The investigator testified that she went to Globe's office with a copy of a local newspaper which carried one of Globe's advertisements. The investigator told a Globe agent that she was interested in renting a five-bedroom house in Anderson Township for $275 per month which was specifically listed in Globe's advertisement. The investigator explained that she showed the agent the ad, told him she was interested in the five-bedroom house for $275 per month, signed the contract and paid the $70 fee. The investigator was then given a computer printout of rental listings and told "to take it home * * * and call on [her] own [to] ascertain whether or not it was available or whatever." The investigator testified that the list she was given did not contain the advertised five-bedroom house for $275 per month. After contacting the respective landlords, the investigator discovered that of the two houses in Anderson Township, one rented for $600 per month and the other rented for $700 per month.

The foregoing establishes that Globe is not operating its business just like an ordinary newspaper. Rather, the record establishes that much more is being done in that there is direct contact with prospective tenants and concomitant opportunities for abuse which the licensing statutes are calculated to minimize. The record demonstrates the existence of such abuse by Globe in the case *sub judice.*

The first part of the four-part analysis for determining the validity of governmental restrictions on commercial speech, as provided in *Central Hudson Gas & Electric Corp.* v. *Public Service Comm. of New York, supra,* is that the commercial speech in question must concern lawful activity and not be misleading. This is a threshold requirement, since "[t]he First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading." *Metromedia, Inc.* v. *City of San Diego* (1981), 453 U.S. 490, 507. We agree with Globe that its speech

concerns a lawful activity. But, although the evidence below suggests that Globe's advertising is misleading, the superintendent has chosen, on appeal, not to question the accuracy of the advertisements. We further note that the trial court did not find the speech to be misleading. Nevertheless, even assuming that the commercial speech in question is not misleading (and thus deserving of First Amendment protection), we find that the remaining three prongs of the test, as provided in *Central Hudson Gas & Electric Corp.* v. *Public Service Comm. of New York, supra,* have been satisfied.

Our due process and equal protection analysis, *supra,* has articulated in great detail the asserted state interests. We believe that those interests are substantial ones. We also conclude that the real estate licensing statute directly advances those substantial interests and that it is not more extensive than necessary to achieve those interests. Globe's assertion that R.C. 4735.01 (A)(10) impermissibly impinges upon its right to engage in commercial speech is without merit. The statute is constitutional. The assignment of error is overruled.

For the foregoing reasons, the judgment of the court of common pleas is affirmed.

*Judgment affirmed.*

Black, P.J., and Hildebrandt, J., concur.